were identified by Scherg. The defendant does not contradict this testimony in any respect, except to testify that he never exhibited the pictures to Scherg. The case did not present the question of the oath of Scherg against that of the defendant, but of Scherg's testimony coupled with that of the police officer against the defendant.

It may be entirely true that the defendant bore a good character, but that is not conclusive; for the rule is that if, after considering the evidence of good character with all of the other evidence in the case, the jury conclude that the defendant is guilty, they must so find, notwithstanding his good character. People v. Conrow, 200 N. Y. 356, 361, 93 N. E. 943.

[3] The evidence submitted upon the motion for the new trial is based upon the affidavit of Butcher to the effect that he did not see any struggle between the lad and the defendant, that the lad was not at the office of the defendant for so long a time as the lad testifies, but only for a short moment, and that Butcher was ill on the day of the trial. But the defendant knew of the existence of this witness at the time of the trial, for he had called him to testify before the magistrate. At the trial the court was informed that this witness was absent on account of rheumatism, that defendant had asked him to come, that he had said that he would not come, but no application was made for an adjournment, or for a continuance of the trial, upon this ground. However that may be, the testimony of the witness was simply as to collateral facts.

I think the judgment of conviction of the Court of Special Sessions must be affirmed. All concur.

---

(153 App. Div. 296.)

**PALMER v. NEW YORK CENT. & H. R. R. CO.**

(Supreme Court, Appellate Division, Second Department. November 15, 1912.)

1. DEATH (§ 99*)—DAMAGES—EXCESSIVE DAMAGES—EVIDENCE.

A verdict of $950 in an action for damages to a father, who died 3 years 2 months after his daughter, from death of his daughter, at the time of age, but who spent part of each year at home assisting him in his store, and at other times was away earning $18 a week, from which she was repaying him what he had expended for her education, *held* not so excessive as to require reduction.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125–130; Dec. Dig. § 99.*]

2. DEATH (§ 84*)—DAMAGES—FUNERAL EXPENSES.

Though a father was not legally bound to pay the expenses of his daughter's funeral, she being of age, yet, she being still a member of his family and without an estate, he may recover as damages from her death what he paid for her funeral expenses.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 110; Dec. Dig. § 84.*]

3. DEATH (§ 86*)—DAMAGES—INSTRUCTIONS.

Where a daughter had agreed to repay her father what he had expended for her education, and at her death was engaged in repaying

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

him from her earnings, and some part thereof, the amount not appearing, remained unpaid, a charge, in his action for her death, that no allowance .could be made for what she would have paid him thereon, was properly refused.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 108, 112–114, 117, 119; Dec. Dig. § 86.*]

Appeal from Trial Term, Rockland County.

Action by Warren Palmer, administrator de bonis non of Jeannette H. Palmer, deceased, against the New York Central & Hudson River Railroad Company. From a judgment for plaintiff, and from an order denying a motion for new trial, defendant appeals. Affirmed.

See, also, 145 App. Div. 943, 130 N. Y. Supp. 1123.

Argued before JENKS, P. J., and HIRSCHBERG, THOMAS, CARR, and WOODWARD, JJ.

Mortimer B. Patterson, of Nyack, for appellant.

George A. Blauvelt, of New York City (Joseph A. Warren, of New York City, on the brief), for respondent.

THOMAS, J. [1] A father brought this action to recover damages for the death of his daughter by the defendant's negligence, and died 3 years and 2 months after his daughter. The question is whether $950 damages for her death are excessive, whether the additional sum found for funeral expenses paid by the father is recoverable, and whether the court erred in the charge. The daughter, educated at a public school, had passed her majority, studied the millinery trade, and, save for 3 months employed elsewhere, had made her home with her father, whom she had aided about his store and house, and to whom she had repaid $50 of whatever money he had expended for her education. At the time of her death she held a position as a milliner at $18 per week, but had for several weeks been home on a vacation, and her intention to spend 5 or 6 months of each year at home appears. The period of 38 months, had she lived, would have found her at home in each year for the time stated, assisting as described, and the remaining time at her place of business, earning money to make further repayment towards her education, and for the whole time the jury have found an average pecuniary loss to him of $25 per month. Had she remained at home during the entire time, that sum would approximate the moderate wages of a house servant, and, considering her ability to aid him in his drug store and her repayment for her education, we do not deem the finding so palpably excessive as to require reduction.

In this class of cases mathematical calculation of income and outgo and a balance of profit shown has not been enforced, and cannot be, in the nature of the case. In Houghkirk v. President, etc., D. & H. C. Co., 92 N. Y. 219, 44 Am. Rep. 370, it was said of the statute then in force:

"Recognizing the generally prospective and indefinite character of those damages, and the impossibility of a basis for accurate estimate, it allows a jury to give what they shall deem a just compensation, and limits their judgment to a sum not exceeding $5,000. Tilley v. Hudson Riv. R. R. Co., 29

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

N. Y. 252, 86 Am. Dec. 297. But within that range the jury is neither omnipotent, nor left wholly to conjecture. They are required to judge, and not merely to guess, and therefore such basis for their judgment as the facts naturally capable of proof can give should always be present, and is rarely, if ever, absent. The pecuniary loss in any such case must be composed of very different elements. It may consist of special damages—that is, of an actual, definite loss—capable of proof, and of measurement with approximate accuracy, and also of prospective and general damages, incapable of precise and accurate estimate, because of the contingencies of the unknown future."

In the case at bar the time of the father's loss is accurately measured, and the daughter's probable service at home and abroad fairly appears. In what variety of work she would have aided her father at home is described, and what she would have earned at her trade, and that she still owed him for her education, and had a purpose to pay him, is clear, although the amount is not stated. But it was before the jury that it was for her education. In view of these facts, it cannot be decided that the jury have gone beyond that judgment which is usable by them, although the limit of their function seems nearly reached.

[2] The father paid the funeral expenses of his dead child, who left no estate. It is urged by the appellant that he was not legally bound to do so, and that he cannot recover therefor. The next fact to the death was the burial. It was a deed necessitated by the defendant's negligent act. The burial must be at public or private expense, and if at private expense the burden by every consideration falls upon the parent able to sustain it. It is urged that the father was not legally bound to bury his daughter, who spent half the year in his service without wages. The child was yet a member of the family, not yet wholly emancipated, giving as a child to the parent, and when death came the father did what he would do to a minor child, gave it burial. I do not deem that the test is altogether whether the father could be compelled to bury his daughter, or to reimburse whoever did it. His relation to the child compelled it. His failure would have been abhorrent to his sense of duty and to parental affection, and would have invited and received the contempt of all knowing of it. When a wrongdoer kills a daughter just past her twenty-first birthday, and still related to her father's family as a serving member of it, the father may treat the child as if it were yet a minor, and suitably bury it, and recover the reasonable expenses of it.

[3] The court did not err in refusing to charge that the jury could make no allowance for any sum the decedent would have paid her father on account of tuition. There was still a sum due, and she had agreed to pay it. The amount does not appear; but the jury could not be directed to make no allowance, however slight.

The judgment and order should be affirmed, with costs. All concur.