SARAH JOHNSON, ADMINISTRATRIX, APPELLEE, V. CITY OF
OMAHA, APPELLANT.

FILED APRIL 19, 1922.   No. 22046.

1. **Negligence:** INJURY: PROXIMATE CAUSE.   "The proximate cause
of an injury is that cause which, in the natural and continuous
sequence, unaccompanied by any efficient intervening cause, pro-
duced the injury, and without which the result would not have
occurred." *Spratlen v. Ish*, 100 Neb. 844.

2. ———: ———: ———.   "A party is only answerable for the
natural, probable, reasonable, and proximate consequences of his
acts; and where some new efficient cause intervenes, not set in
motion by him, and not connected with, but independent of, his
acts, not flowing therefrom, and not reasonably in the nature of
things to be contemplated or foreseen by him, and produces the
injury, it is the proximate and dominant cause." *Kitchen v.
Carter*, 47 Neb. 776; *Merkouras v. Chicago, B. & Q. R. Co.*, 104
Neb. 491.

3. ———: COMPARATIVE NEGLIGENCE: QUESTION FOR COURT.   When
the facts in evidence, in an action for damages by reason of al-
leged negligence on the part of a defendant, clearly show con-
tributory negligence on the part of the party injured, to such an
extent that no reasonable mind can believe that such contributory
negligence is slight and the negligence, if any, of defendant gross
in comparison therewith, it is error to, by an instruction to the
jury, authorize the jury to make such comparison and base its
verdict thereon. In such case the jury should be instructed to
find for such defendant.

4. ———: "LAST CLEAR CHANCE."   Evidence examined, and *held* in-
sufficient to authorize an instruction to a jury permitting it to re-
turn a verdict based on "the last clear chance" doctrine.

APPEAL from the district court for Douglas county:
CHARLES LESLIE, JUDGE.   *Reversed and dismissed.*

*W. C. Lambert*, for appellant.

*B. S. Baker* and *W. M. Giller, contra.*

Heard before LETTON, DEAN and DAY, JJ., CLEMENTS (E. J.) and WELCH, District Judges.

WELCH, District Judge.

This is an action against the city of Omaha and one Ernest Moschel to recover damages because of certain alleged acts of negligence by an employee of the city in driving a motor fire truck upon Eighteenth street approaching Cass street in the city of Omaha, at 18 miles an hour, and failing to have said truck under proper control and management, and failing to slacken the speed of said truck as it approached the intersection of said streets, whereby said fire truck ran into an automobile driven by one Morris Johnson, which had been thrown into and against said fire truck by another automobile traveling on Cass street, driven by the defendant Ernest Moschel, coming into collision with the automobile of said Johnson, whereby said Johnson, by the collision with the said fire truck, was thrown from his automobile and killed.

The city denied each and all the acts of negligence alleged against it; alleged that the death of deceased was not due to any want of care on the part of its employees in charge of said fire truck, and that the same was not the proximate cause of the injury to the deceased. The city further alleged that the deceased came to his death solely as a result of negligence and want of care both on his part and upon the part of the codefendant, Moschel. It further alleged that the circumstances of the collision and throwing of deceased under the truck of the city were such, and occurred in such a manner, as to make it impossible for the city to prevent whatever injury the deceased may have sustained on account of collision with its fire truck. Trial was had to a jury resulting in a verdict of $6,800 against both the city and said Moschel. The city appeals from the judgment rendered against it thereon.

The fire truck was returning to its station from a repair shop. It was not answering an emergency call.

The occurrence of the accident resulting in the death of Johnson is best shown by the testimony of the witness Snyder, called by plaintiff. He was the only witness called by plaintiff who testified to seeing both collisions, and, in fact, the only witness she called who testified to seeing either of the collisions. His testimony was as follows: "Q. As I understand you, Mr. Snyder, you were at the northwest corner of Eighteenth and Cass streets? A. Yes, sir; by the time the fire truck stopped I was ready to step off the curbing. Q. Yes. Did you see the three cars involved in this accident? A. Well, I seen the two of them; I seen Mr. Moschel hit Johnson's car and swerve it into the fire truck; of course, that obstructed my view of the fire truck when the other car was thrown into the fire truck. Q. Did you see the fire truck coming north on Eighteenth street? A. Yes, sir. Q. And you saw the Moschel car going east on Cass street? A. Yes, sir. Q. And you saw the Johnson car going south on Eighteenth street? A. Yes, sir. Q. The Johnson car going south was—which side of Eighteenth street was he driving on? A. He was on the west side, on the right-hand side of the street. * * * Q. When did you see the fire truck first?. How far away was it? A. Well, I noticed the fire truck at the other crossing about the south end of the block as I was coming up the street. Q. It was going— A. It was going north. * * * Q. Now, you may tell us, Mr. Snyder, what was the approximate speed of that fire truck as it was going north. A. Well, to my decision it was about 18 miles an hour, and which I also heard Mr. Duda to say that the speed indicator stopped on 18 miles. * * * Q. Did you see the Moschel car? A. Yes, sir. * * * Q. Tell the court and jury if you observed the speed of that car? A. Well, Mr. Moschel, to my estimation, was traveling about 25 miles an hour. Q. Yes. When he came to the crossing, or to the Johnson car, did he swerve his car or do anything with reference to stopping the car? A. Not a thing. * * * Q. When the Moschel car, or the Liberty car, struck the Johnson car, tell the court and jury what part of the Johnson

car was struck by the Moschel car. A. When the—when the man Moschel's car hit the Johnson car, it hit it back of the hub on the rear, on the right hand, Mr. Moschel's right front wheel hit the Johnson car, swerving it around. * * * Q. Then what happened to the Johnson car? A. The Johnson car was thrown directly in front of the fire truck. * * * Q. I mean the Johnson car, what part of the Johnson car did it hit? A. It hit the rear end of the Johnson car also. Q. And did that cause the Johnson car to rebound? A. Yes, sir. Q. So that it was facing south? A. The Johnson car, when it stopped, after the truck had hit it, was facing the same way that Mr. Johnson was traveling; it was straight south. Q. Now, what happened to the two men in the Johnson car? A. The two men were both thrown out of the car. * * * Q. What happened then to Johnson, as to whether or not the rear wheel of the fire truck ran against him? A. Well, when Mr. Johnson landed on the paving, the fire truck was coming straight, and it appeared that Mr. Johnson was stunned and the fire truck ran onto his head, not passing over his head, but crushed his head. Q. Yes. A. So that his head was not over, I would say, three inches in thickness, but when the fire truck stopped at the center of the intersection, after sliding about ten feet or so after the brakes had been set, it drug the body of Mr. Johnson for ten feet before the truck stopped."

On cross-examination he testified as follows: "Q. I believe you stated a moment ago you were just a little to the north of the north line of Cass street on the west? A. Well, I was about five or six feet from the edge of the curbing. * * * Q. You were going south? A. South. * * * Q. In your judgment, what was the rate of speed of the Ford car? A. About 18 to 20 miles an hour. Q. The Ford car passed you immediately to your left? A. Yes, sir. Q. How far away from the west curb of Eighteenth street? A. Well, I should judge that he was not over 3½ feet away from the curbing. * * * Q. Who got onto the intersection first, Moschel, or the Ford car? A. Mr. Johnson—the

Ford car. * * * Q. How far had you observed the Moschel car coming? A. Up past the driveway into the filling station. Q. Could you give the jury an estimate in feet? A. Well, I should judge it would be about 60 or 75 feet. Q. From the west side of the intersection? A. The west side of Eighteenth street. * * * Q. But where had Johnson gotten in the intersection when he was hit; how far to the south had he gotten? A. Well, he was about ready to leave the intersection. * * * Q. And did the Moschel car go in a direct easterly course? A. Yes, sir. Q. Did Mr. Johnson go on in a direct southerly course? A. No; Johnson's car was throwed around. Q. No; I mean before he was hit? A. Oh; yes, sir. * * * Q. And went directly south, and the other went directly east? A. Yes, sir. * * * Q. Well, you figured there would be a collision? A. I think there would be; yes, sir. Q. And so your attention was riveted on the situation? A. Yes, sir. * * * Q. In your judgment, had Johnson's front wheel reached the south side of the intersection at the point of the collision? A. Yes, sir. * * * Q. Before you noticed, or at about the time you noticed, the Moschel car and saw Johnson's car pull up even with you, you observed the approach of the fire truck? A. Yes, sir. * * * Q. Well, within the block? A. Within the block, about half ways in the block, about, at that time. * * * Q. It was on the east side of the street? A. Well, it was—there was some cars parked, if I ain't mistaken, some cars parked on the east side of the street, and it naturally had to get away to clear them cars. Q. But it was nearer the east side than it was the west side? A. Oh, yes. Q. Now, when the crash or collision came, the Johnson car was thrown to the east? A. Yes, sir. Q. In your judgment, how many feet out of the line that it was traveling was it thrown east? A. It was thrown east so quick that I don't hardly think that the front end traveled over two feet after it was hit; of course, in the motion it was lunged over and then pounded right back. * * * Q. Now, Moschel went right on? A. Yes, sir; Moschel went right on and stopped after he got past the intersection 15 or 20 feet.

* * * Q. So that, when Johnson's car and Moschel's car collided, the fire truck was far enough away so that Moschel went right on in a direct course and cleared that fire truck, didn't he?. A. No. Q. How? A. He lunged right into the fire truck. Q. No; I am speaking of Moschel. A. Oh, Moschel, yes, he cleared all of it. Q. Yes, Moschel went directly east? A. Yes. Q. He did not change his course? A. No, sir. * * * Q. So that the fire truck must have been some little distance south of the point of collision? A. Well, I should judge—of course, when the collision come, it kind of happened right away from the truck a little bit, but the truck traveling to the north there, and the other one to the south, I imagine it was a car length back. * * * Q. Now, Mr. Snyder, the collision between the fire truck and the Ford was at the front end or middle of the fire truck? A. It was at the front end of the fire truck. Q. You are sure of that? A. The left front wheel. * * * Q. When the Johnson car collided with the fire truck, did it tip it over? A. No, sir. Q. In your judgment it was at that time that Johnson went out of the car? A. That is, at the rebound when the truck hit it back, because that was what pushed the two men out of the car. * * * Q. So the collision between the Ford car and the fire truck, according to your statement, would be somewhat south of the intersecting line of Eighteenth and Cass? A. Well, I should say that it was about three or four feet south of the curbing line on the south side of Cass street. * * * Q. Then, Mr. Snyder, calling your attention to the Ford car and the Moschel car coming together, at the rate of speed that you have mentioned, neither slackened their rate of speed that you could tell, did they? A. No, sir. * * * Q. So the other car hit it; and how far would you say that it knocked the hind end east; as far as the center of Eighteenth street? A. Yes, sir. Q. Or, farther? A. Well, not much farther, not over a foot past the center. * * * Q. And it was there where it came in contact with the fire truck? A. Yes, sir; with the left side of the fire truck."

No other witness called by plaintiff testified to the man-
ner in which either of the collisions occurred. They testi-
fied that they heard a crash, and to the location of John-
son's body, and of Johnson's automobile and the fire truck,
after they had stopped. The evidence shows that the pave-
ment of Eighteenth street is 60 feet wide and that of Cass
street 40 feet wide, each street being 100 feet in width. On
the west side of Eighteenth street was a four-story brick
building standing about 40 feet north of the north line of
Cass street and about 20 feet back from the west line of
Eighteenth street. The 40 feet between Cass street and
said Eighteenth street was unoccupied, but surrounded by
a board fence six feet high. On the south side of Cass
street and west side of Eighteenth street was a gasoline
filling station, the driveway thereto coming on each street
to within about 20 feet of the corner, and was about 30
and 35 feet in width at the curb line. This driveway
passed on each side of the building occupied by the filling
station. The distance from the south line of Cass street to
the north line of the street south thereof was 284 feet.
The driver of the fire truck and the party with him testi-
fied that at about the middle of the block south of Cass
street he was going about 18 miles an hour, and was slow-
ing down to cross Cass street when the Moschel car hit
the Johnson car and threw it directly against the front
end of the fire truck on the left side; that the brakes of
the fire truck were immediately put on. The driver of the
fire truck also testified that he saw the Johnson car coming
south, when it was north of Cass street, at about 18 miles
an hour, and that when the fire truck was about the middle
of the block and just north of the alley he saw the Moschel
car about 150 feet from the west line of Eighteenth street
coming from the west at about 25 miles an hour, and that
he had no idea that there would be a collision between the
Moschel car and Johnson's automobile. He also testified
that, had the Johnson car continued in the course it was
going, he would have passed it when they met, with six
feet clear between them.

There is practically no contradiction of any of the fore-going testimony. The only dispute or difference, in the testimony of the witnesses, is as to the location of the John-son car, with reference to the south curb line of Cass street extended across Eighteenth street, at the time of its col-lision with the fire truck. The witnesses for the plaintiff testify that it was within a few feet, three to ten feet south of the curb line, while the city's witnesses put it on the curb line or a little north thereof. All the witnesses agree that Johnson's body, when the truck stopped, was just a few feet south of the street intersection about on the center line of Eighteenth street.

Appellant's assignments of error Nos. 3 and 7 complain of the withdrawal from consideration by the jury, by in-struction of the court on its own motion, of the entire testi-mony of a witness called by plaintiff. The plaintiff, during the trial of the case, moved the court to withdraw the testi-mony of this witness. There was nothing in his testimony favorable to the defendants or either of them. If it was favorable to any party to the suit it was to the plaintiff. But it varied so from the other testimony of plaintiff's wit-nesses that it was unreliable. If it was error to strike out the testimony of this witness and instruct the jury to dis-regard the same, it was error without prejudice.

The other assignments of error relate to the giving of instructions by the court on its own motion and refusal to give instructions requested by the city. The court on its own motion instructed the jury on the doctrine of "the last clear chance," permitting the jury to base a verdict for plaintiff thereon. The court also gave to the jury an in-struction authorizing a verdict against the city on the basis of our comparative negligence statute. The court refused to give an instruction requested by the city telling the jury that there was no question to submit to them under the doctrine of "the last clear chance." It also refused an instruction requested by the city telling the jury that no recovery could be had against the city on the basis of com-parative negligence between the deceased and the driver

of said fire truck. The court also refused to instruct the jury, on the motion of the city, to return a verdict for the city.

The assignments of error relating to the giving and refusing of the foregoing instructions, together with the assignment that the verdict is not supported by the evidence, require the same consideration and discussion of the evidence.

One question to be determined is whether there is evidence of negligence on the part of the driver of the truck which was the proximate cause of the collision of the truck with the Johnson automobile. The negligence on the part of the driver of the truck, and the only negligence relied on in the brief of appellee, is, he "drove said truck at a high and dangerous rate of speed, and beyond the ordinance limit, and contrary to the statute of the state of Nebraska, * * to wit, 18 miles an hour;" that he "negligently and carelessly failed to have said truck under proper control and management at said crossing, and negligently and carelessly failed to keep a proper lookout for other vehicles using said crossing, and negligently and carelessly failed to slacken the speed of said truck as it approached said crossing, and negligently and carelessly failed to stop said truck before it ran over and killed the said Morris Johnson." The only evidence offered in support of said allegation of the petition was that relating to the speed of the fire truck and the distance it traveled after hitting the Johnson car. Appellee in her brief says: "The proximate cause of Johnson's death was the unlawful speed of the fire truck." The accident happened October 25, 1919. The statute (Laws 1919, ch. 222, sec. 28) in force at that time did not prescribe the rate of speed on approaching or crossing the intersection of streets in a city. It provided: "Within any city or village no motor vehicle shall be operated at a rate of speed greater than is reasonable and proper, having regard of the traffic and use of the road and the condition of the road, nor at a rate of speed such as to endanger the life or limb of any person." The ordinance

of the city of Omaha contained the same provision as the above statute, and further provided that driving in excess of 12 miles an hour at all intersections and at 20 miles an hour at other points not within the congested district should be presumptive evidence of driving at a rate of speed which is not reasonable, safe, or proper. The intersection of Cass and Eighteenth streets is not shown to be within said congested district. The rate of 18 miles an hour between the street intersection is not, therefore, contrary to the statute, nor to the ordinance, unless it was greater than was reasonable and proper, having regard of the traffic and use and condition of the road. Even if the rate of speed of the fire truck exceeded the limit provided by statute or ordinance, it would not be negligence *per se.*

"When a driver of a motor vehicle exceeds the speed limit provided by statute, such driving is not negligence *per se,* but is to be considered by the jury with all of the evidence and circumstances of the case in passing on the question of negligence." *Lady v. Douglass,* 105 Neb. 489.

It is also held that a rate of speed so forbidden affords reasonable grounds for inferring negligence. *Stevens v. Luther,* 105 Neb. 184; *Omaha Street R. Co. v. Duvall,* 40 Neb. 29. The speed of the fire truck did not constitute negligence *per se.* The condition of the traffic and road and the facts and circumstances connected with and accompanying the accident must, therefore, be shown by the evidence to be such as to constitute the speed of 18 miles an hour, under such circumstances and conditions, negligence, before it can be found that such speed of the fire truck was negligence on the part of the driver thereof. The facts and circumstances and condition of the traffic shown by the uncontradicted evidence in this case are; that the deceased was driving his automobile south on the right-hand side of Eighteenth street at about 18 miles an hour; the fire truck running north on the opposite side of said Eighteenth street at 18 miles an hour, in the block south of where the deceased was driving his car, the fire truck running just east of the center of the street on account of

automobiles parked against the east curb of said street; the Moschel car coming east from the west side of Eighteenth street, on the south side of Cass street, about 175 feet west of the west curb of Eighteenth street, running about 25 miles an hour, at the time that the fire truck was about 150 feet south of the south curb of Cass street. This condition of the traffic and road would in no way tend to make it negligence for the fire truck to be there driven at 18 miles an hour. No reasonable mind could come to that conclusion. The uncontradicted evidence further shows that Johnson drove his automobile south across Cass street at 18 miles an hour, and after the front end of his automobile passed the south curb of Cass street the Moschel car struck the right hind wheel of Johnson's car, throwing the car to the east and slightly south, so that the rear end of Johnson's car went a foot or so to the east of the center of Eighteenth street, where it struck the left front end of the fire truck, or the fire truck ran against it, as the fire truck was approaching the intersection at Cass street. We consider that the question as to where the Johnson car was hit by the fire truck is determined to be at the place claimed by plaintiff, i. e., three to six feet south of the south curb line of Cass street extended across Eighteenth street. The collision between the fire truck and the Johnson car threw Johnson out of his car and threw the car around so that it stood with the front to the south. Johnson fell out so that his head was caught under the left hind wheel of the fire truck; the brakes of the truck being set, the wheel slipped and did not roll over Johnson's head, but dragged Johnson's body along the pavement for about 10 feet, to a point a few feet south of the center of the street intersection, which center was 20 feet north of the south curb line of Cass street. The collision with the fire truck must have followed immediately after that with the Moschel car, and as soon as the Johnson car reached the point to the east to which it had been thrown by the impact with Moschel's car. This fact is shown, not only by the testimony of Snyder and the occupants of the fire truck, but also by the

fact that Johnson had not yet gotten out of his car, presumably from lack of time, to examine the damage to it caused by the collision with the Moschel car whereby the right rear wheel was broken. The witness, May K. Lawrence, called by plaintiff, testifies that she was going north on the east side of Eighteenth street, and that before crossing Cass street she heard a noise behind her, looked around, and saw the fire truck coming about half way back to the other crossing; that she took a few steps north, wondered if the truck was going straight ahead or was going to cross the street in front of her; that she was very close to the corner when the collision occurred, that is, to the south curb of Cass street; that she could not see just where the Johnson car was when the truck struck it, because the truck was between her and the car. She also testifies that she did not see or hear the collision between the Moschel car and the Johnson car. Other witnesses also testify to hearing the crash between the fire truck and the Johnson car, but that they did not hear the collision between the Moschel car and the Johnson car. This would indicate that the two collisions were so near each other in point of time as to be considered the same crash. If the Moschel car traveled at 25 miles an hour, it would travel the 175 feet from where the driver of the fire truck saw it approaching to where it struck the Johnson car in a little less than 5 seconds. The fire truck, if traveling 18 miles an hour, would travel the 144 feet to the point 3 feet south of the south curb line of Cass street in 5½ seconds. The two collisions must have happened, then, within a second of each other, and the Johnson car thrown into the course of or against the fire truck not more than a second before the collision with it. While the evidence of the speed of the vehicles and distances as to their relative positions are matters of opinion or estimate, and not actual measurements, the witnesses testifying to the speed all agree as to that of each of the three cars, and the same witnesses testify as to the distance of the cars from the streets. If not exact as to speed and distance, the variation would apply alike to

each, and the relative position of the cars when the Moschel car hit the Johnson car would be the same. No reasonable mind could believe, under the conditions thus shown, that the driver of the fire truck did see, in time to have avoided a collision with the Johnson car, that said car was in his course, or that he should have seen or anticipated that the Johnson car was, or would be, thrown into his truck. There was no evidence, therefore, to authorize an instruction to the jury that it could return a verdict against the city based on "the last clear chance" doctrine. The court, therefore, erred in giving such instruction, and in refusing to give the instruction requested by the city telling the jury that there was no question to submit to them under the doctrine of "the last clear chance."

Appellee argues that, had the fire truck been going slower, it would have been far enough away from the Johnson car after it had been thrown into its course for the fire truck to have been stopped and avoid the collision. It may likewise be said that, had Johnson been traveling slower and not crossed the intersection of Cass street at a speed exceeding 12 miles an hour—the ordinance rate—he would not have reached the south side of Cass street in time to have been hit by Moschel's car. If the speed of the fire truck was negligent, that of the Johnson car was equally negligent. Furthermore, if Johnson, on approaching Cass street, had looked to the west and kept a lookout for cars going east thereon, he would have seen Moschel's car coming at a rapid rate. The plat introduced in evidence shows that he could have seen from a point 100 feet north of the south curb of Cass street for a distance of at least 100 feet to the west of the west intersection line of Eighteenth street, had looked to the west and kept a lookout for cars going east thereon, he would have seen Moschel's car coming at a rapid rate. The plat introduced in evidence shows and saw Moschel's car, he was also negligent in crossing Cass street. These acts of negligence on Johnson's part contributed to cause the collision with the fire truck. No reasonable mind would say that the negligence of Johnson

in the speed of his car, and in crossing Cass street, was slight when compared with the negligence, if any, of the driver of the fire truck, and that negligence of the driver of the fire truck was gross.

"If, on the trial of an action 'brought to recover damages for injuries to a person or to his property caused by the negligence of another,' plaintiff is found to be guilty of negligence directly contributing to the injury complained of, he cannot recover, even though defendant was negligent, unless the contributory negligence of plaintiff was slight and the negligence of defendant was gross in comparison therewith; and if, in comparing the negligence of the parties, the contributory negligence of the plaintiff is found to exceed in any degree that which, under the circumstances, amounts to slight negligence, or if the negligence of defendant falls in any degree short of gross negligence under the circumstances, the contributory negligence of plaintiff, however slight, will defeat a recovery." *Morrison v. Scotts Bluff County,* 104 Neb. 254.

There were no conditions shown by the evidence which would warrant a comparison by the jury of negligence between the deceased and the driver of the fire truck. The court erred in giving its instruction allowing the jury to make such a comparison. It also erred in refusing to give the instruction requested by the city that no recovery could be had against the city on the basis of comparative negligence.

Unless there was evidence tending to show, and from which reasonable minds might believe, that the speed of the fire truck was the proximate cause of the death of Johnson, the verdict of the jury is not sustained by the evidence and the court erred in refusing to direct a verdict for the city.

"A party is only answerable for the natural, probable, reasonable, and proximate consequences of his acts; and where some new efficient cause intervenes, not set in motion by him, and not connected with, but independent of, his acts, not flowing therefrom, and not reasonably in the

nature of things to be contemplated or foreseen by him, and produces the injury, it is the proximate and dominant cause." *Kitchen v. Carter,* 47 Neb. 776; *Merkouras v. Chicago, B. & Q. R. Co.,* 104 Neb. 491.

"An injury that could not have been foreseen or reasonably anticipated as the probable result of the negligence is not actionable, nor is an injury that is not the natural consequence of the negligence complained of, and would not have resulted from it, but for the interposition of some new, independent cause that could not have been anticipated." *Chicago, St. P., M. & O. R. Co. v. Elliott,* 5 C. C. A. 347.

"The concurring negligence of another cannot transform an act of negligence which is so remote a cause of an injury that it is not actionable into a cause so proximate that an action can be maintained upon it. It cannot create a liability against one who does not legally cause it, or make an injury the natural and probable result of a prior act of negligence which was not, or would not have been, such a result in its absence." *Cole v. German Savings & Loan Society,* 59 C. C. A. 593. The last two cases are cited with approval in *Spratlen v. Ish,* 100 Neb. 844.

Applying the foregoing rules of law to the facts uncontrovertedly established in this case, was the death of deceased the natural, probable, reasonable and proximate consequence, under the circumstances of this accident, of the speed of the city's fire truck? A new and efficient cause, not set in motion by the driver of the fire truck, and not connected with, but independent of, his acts, not flowing therefrom, is shown by the evidence to have intervened. Such intervening cause could not reasonably in the nature of things be contemplated or foreseen by the driver of the fire truck. The casting of Johnson in his automobile directly in the course of, or against, the fire truck by the said Moschel's car was that new and efficient intervening cause. No reasonable mind could arrive at the conclusion that the driver of the fire truck, observing the said approach of said cars, could anticipate or foresee

that one car approaching would or might cast the other car into his course so near him that he could not stop and avoid a collision, nor, in fact, that he could foresee or anticipate that it would be cast into his course at any point whatever, nor that he could anticipate or foresee that there would be a collision between the other two cars at the street intersection. The collision of the Moschel car with Johnson's car, thereby casting the latter car against the fire-truck or into its course, was the proximate cause of the death of Johnson. The distance which the fire truck traveled after coming into contact with the Johnson car might aid in determining the rate of speed of the truck. If, however, the speed of the truck was not the proximate cause of the accident, that distance of travel could not make the speed the proximate cause. Negligence could not be inferred from the distance of travel, for the evidence showed, without contradiction, that the driver of the truck, on seeing there was to be the collision, did everything that could be done to stop the truck. The brakes were set and the wheels sliding from the time of the accident. The evidence does not tend to show, and does not show, that any negligence on the part of the driver of the city's fire truck was the proximate cause of the death of Morris Johnson. The verdict of the jury is not sustained by the evidence. The court erred in refusing to direct a verdict for the city.

The judgment against the city, appellant herein, is reversed and vacated, and this cause, as to the city of Omaha, is dismissed.

REVERSED AND DISMISSED.