ALBERT A. KILLION, ADMINISTRATOR, APPELLEE, V. HERMAN DINKLAGE, APPELLANT.

FILED MAY 29, 1931. No. 27721.

*Fred S. Berry,* for appellant.

*C. H. Hendrickson* and *Saxton & Hammes, contra.*

Heard before Goss, C. J., Rose, Dean, Good, Eberly, Day and Paine, JJ.

Day, J.

This is an action brought by the administrator of the estate of Charles Killion, deceased, under sections 30-809 and 30-810, Comp. St. 1929, to recover damages for the death of the deceased caused by the negligence of the defendant in the operation of his automobile, resulting in a collision. This action was prosecuted for the benefit of the father and mother of the deceased. From a verdict in favor of the administrator, the defendant appeals.

The petition alleges: "Charles Killion died unmarried, intestate, leaving surviving him his father, Albert Killion, and his mother, Jessie Killion, who are his next of kin; * * * that the plaintiff has sustained and suffered great loss and injury occasioned by loss of services and means of support and contributions therefor, and has been damaged on this first cause of action for the benefit of said father and mother." The petition of the plaintiff was challenged by a general demurrer. It is the contention of the defendant that this is not sufficient to state a cause of action in favor of plaintiff. He relies on the case of *Chicago, B. & Q. R. Co. v. Van Buskirk*, 58 Neb. 252. It was there held that a petition alleging that deceased left as his heirs and next of kin a father and mother did not state facts sufficient to constitute a cause of action. To practically the same effect is *Chicago, B. & Q. R. Co. v. Bond*, 58 Neb. 385, and *Chicago, R. I. & P. R. Co. v. Young*, 58 Neb. 678. Upon a retrial of the latter case, the petition was amended to include an allegation of pecuniary loss. *Chicago, R. I. & P. R. Co. v. Young*, 67 Neb. 568. Where there is a legal duty to support, it has been held that an averment of relationship is sufficient. *City of Friend v. Burleigh*, 53 Neb. 674; *Omaha & R. V. R. Co. v. Crow*, 54 Neb. 747; *Kearney Electric Co. v. Laughlin*, 45 Neb. 390; *Orgall v. Chicago, B. & Q. R. Co.*, 46 Neb. 4. It appears that the rule has long been established in this state that, in an action to recover for wrongful death, a petition is fatally defective which discloses no survivor entitled by law to support by the person deceased, and does not allege any pecuniary loss to such survivors as are described. The plaintiff relies upon the case of *Tucker v. Draper*, 62 Neb. 66, to support his petition. The allegation was that the father was damaged "by reason of death and loss of service" of a three year old son. Since the father of a three year old son is legally entitled to his service during his minority, the averment or relationship was held sufficient. A presumption of pecuniary loss exists in favor

of one legally entitled to service or support from one killed by the wrongful or negligent act of another. The petition in the case at bar describes the parents of deceased, but does not show them to be legally entitled to service or support from the deceased. There is neither allegation of the minority of the deceased nor averment that parents are legally dependent upon him for support. Whether or not a petition which alleges "loss and injury occasioned by loss of services and means of support and contributions therefor" is a sufficient allegation of pecuniary loss under the statute is undoubtedly a close question. A majority of the members of this court are of the opinion that a petition alleging a loss and injury caused by loss of service and contributions for support is sufficient averment of pecuniary loss to state a cause of action. The general demurrer to the petition was therefore properly overruled.

The appellant claims that the judgment should be reversed because the verdict was what is commonly known as a quotient verdict. A quotient verdict is one where the jury for the purpose of arriving at a verdict agree that each should write on his ballot a sum representing his judgment; that the aggregate should be divided by twelve; that they will be bound by the result and the quotient shall be the verdict. It is almost universally held that, if the jury arrive at their verdict in such a manner, it will be set aside. The vice in such a verdict is that it does not represent the deliberate judgment of the jurors and that it is subject to manipulation and partakes of the nature of a lottery. Such an agreement would enable one juror by voting for a very large or a very small sum to produce an average for an amount which would be unreasonable and at variance with the judgment of the other jurors. Such a verdict has been condemned in numerous cases. *Burke v. Magee*, 27 Neb. 156; *Sylvester v. Town of Casey*, 110 Ia. 256; *Haight v. Hoyt*, 50 Conn. 583; *George's Restaurant v. Dukes*, 216 Ala. 239; *Anderson v. Kirby*, 105 Kan. 596; and numerous other cases.

A verdict is not a quotient verdict where the jury acted on the suggestion that each should indicate his judgment as to the amount and that the aggregate amount should be divided by the number of jurors to ascertain the average, where there is no agreement that the amount so found should be their verdict. *Herbert v. Katzberg,* 104 Neb. 395; *Janesovsky v. Rathman,* 107 Neb. 165; *Village of Ponca v. Crawford,* 23 Neb. 662; *Peak v. Rhyno,* 200 Ia. 864; *In re Estate of Havenmaier,* 163 Minn. 218; *Crawl v. Dancer,* 180 Mich. 607; *Reick v. Great Northern R. Co.,* 129 Minn. 14. The fact that the verdict was not the average amount arrived at by adding and dividing is evidence of the fact that it was not a quotient verdict. *McElhone v. Wilkinson,* 121 Ia. 429. It was established by affidavits of jurors, uncontradicted, that the amount arrived at by computation was either $8,600 or several hundred dollars in excess of the verdict returned. We are not unmindful of the fact that there was an attempt to impeach the testimony of the foreman of the jury by impeaching testimony to the effect that he stated shortly after the verdict was returned that the amount arrived at was $8,313, and that they merely cut off the $13. This testimony is denied by the juror. Even the affidavits of the four jurors who stated that they agreed in advance that the amount of said division should be the amount of the verdict do not state that verdict was arrived at without further deliberation. The issue of fact presented by affidavits and counter affidavits of jurors and oral testimony was passed upon by the trial court. This will not now be disturbed. *Janesovsky v. Rathman,* 107 Neb. 165; *Canon v. Farmers Bank,* 3 Neb. (Unof.) 348; *Farmers Irrigation District v. Calkins,* 104 Neb. 196.

Misconduct of juror is another ground urged for reversal. It is alleged that on his *voir dire* examination he testified falsely that he did not have a case pending for trial in the district court for Wayne county and that one of the plaintiff's attorneys was not his attorney in any

matter. The *voir dire* examination of the jury is not preserved in the bill of exceptions. What occurred at the time is presented by affidavits filed in support of a motion for new trial. It appears that the juror had a case pending and that an attorney for the plaintiff represented him in that case. The case was not pending for trial at that term since it had been continued. Therefore this did not constitute a statutory ground sufficient by itself to sustain a challenge for cause. Comp. St. 1929, sec. 20-1609. The attorney for the defendant had some knowledge that there was a case pending in the court in which a man named Beckman was defendant, but he does not contend that he called the juror's attention to it. It also appears that, before the jury had been sworn, an attorney for the plaintiff stated to the attorney for the defendant that some of the jurors were clients of his. Instead of inquiring further, the defendant's attorney stated that he was perfectly willing to try the case to a jury of clients of the plaintiff's attorney. This is admitted by defendant's attorney who now says that he thought it referred to another juror. The attorneys for the plaintiff and the juror deny, or at least say that they have no recollection, that such a question was asked on *voir dire* examination. Therefore this is an issue of fact upon disputed evidence and was determined by the trial judge adversely to the defendant's contention.

It is also true that the right to challenge a juror for cause may be waived or lost where there is a lack of diligence. *Coil v. State,* 62 Neb. 15. When it is called to the attention of defendant's attorney before the jury are impaneled and sworn that the relationship of attorney and client existed between the plaintiff's attorney and some jurors, it was lack of diligence upon his part not to inquire further into the matter.

Complaint is made of the following instruction to the jury by the court: "On the other hand, where contributory negligence is pleaded as a defense as it is in this

case, the burden is upon the defendant to establish that the death of Charles Killion was due to his own negligence to such a degree as to defeat recovery." Similar instructions have been held erroneous by this court. *Gerish v. Hinchey,* 120 Neb. 51; *Davenport v. Intermountain R. L. & P. Co.,* 108 Neb. 387. The burden of proof is upon the plaintiff to establish the negligence of the defendant in order to recover. Contributory negligence does not bar a recovery, where the negligence of the defendant is gross in comparison. *Morrison v. Scotts Bluff County,* 104 Neb. 254. An instruction that casts the burden of proof upon the defendant to establish contributory negligence of plaintiff to prevail in his defense to such a degree as to defeat recovery is in conflict with the statutory comparative negligence rule of this state and is erroneous. While the court in other instructions states the correct rule, the error in this instruction which specifically refers to contributory negligence is such that it undoubtedly confused the jury. This erroneous instruction requires a reversal of the judgment.

Another ground which the appellant urges for a reversal is that he may offer newly discovered evidence. As a general rule a motion for new trial is addressed to the sound discretion of the trial court. A new trial will not be granted upon the ground of newly discovered evidence, where such evidence is merely cumulative or impeaching or not of such controlling force as would probably change the result of the trial. *Parkins v. Missouri P. R. Co.,* 79 Neb. 788; *Blaha v. Chicago & N. W. R. Co.,* 119 Neb. 611; *Simonsen v. Thorin,* 120 Neb. 684; *Omaha, N. & B. H. R. Co. v. O'Donnell,* 24 Neb. 753; *Riley v. Missouri P. R. Co.,* 69 Neb. 82. The testimony offered is in its nature impeaching and cumulative and not such as would probably change the result.

The plaintiff seeks to recover the amount expended for the funeral expenses of the deceased. Recovery of damages is under the statutes. Comp. St. 1929, secs. 30-809,

30-810. This statute was suggested to us by the English law known as Lord Campbell's Act. The English cases hold that funeral expenses are not recoverable. *Clark v. London General Omnibus Co.,* 2 K. B. (1906) 648. In this case, cited by many authorities as representative of the English rule, it is said: "A father cannot recover, either at common law or under the fatal accidents act of 1846 (Lord Campbell's Act), the funeral expenses to which he has been put in burying an unmarried infant daughter, whose death was caused by reason of defendant's negligence and who was residing with her father at the time of her death." Some American cases have followed this rule. See *Delaware, L. & W. R. Co. v. Hughes,* 240 Fed. 941. Some cases cited as authority to support the view that funeral expenses are not recoverable were decided in actions at common law and were not brought under a statute. See *Sherman v. Johnson,* 58 Vt. 40; *Trow v. Thomas,* 70 Vt. 580. In this country, funeral expenses of the deceased may generally be recovered where any of those for whose benefit the action is brought are legally bound to pay them. *Stejskal v. Darrow,* 55 N. Dak. 606; *Castner v. Tacoma Gas & Fuel Co.,* 126 Wash. 657; *Kelly v. Higginsville,* 185 Mo. App. 55; *Swift & Co. v. Johnson,* 138 Fed. 867; *Marshall v. Miller,* 112 Kan. 706; *Carnego v. Crescent Coal Co.,* 164 Ia. 552; *Herning v. Holt Lumber Co.,* 153 Wis. 101; *Palmer v. New York Central & H. R. R. Co.,* 138 N. Y. Supp. 10.

The view of these cases is expressed by the language of *Consolidated Traction Co. v. Hone,* 59 N. J. Law, 275, reversed on rehearing, 60 N. J. Law, 444: "The funeral expenses being part of the pecuniary damages resulting from the death of the son, and which had been paid by the father, can be recovered in the action by the father as the administrator under the statute." The theory upon which recovery is allowed in cases of this nature is that those who have suffered a pecuniary loss on account of the wrongful death of the deceased may recover for the

damage they have sustained by reason of the wrongful act in respect of which the deceased could have brought an action had he lived. The gist of the action is the pecuniary loss for the removal by death of the deceased. It is not a recovery for the injury inflicted on the deceased as such. This reasoning, it is said, leads to the conclusion that funeral expenses are not proper items of recovery. The decisions which hold that funeral expenses are not recoverable adhere to the strict rule that the sole measure of damages is for pecuniary loss occasioned by the destruction of life of the deceased. The weight of authority is to the effect that recovery can be had for funeral .expenses which have been paid by the beneficiaries or for which they were liable. 17 C. J. 1338; 8 R. C. L. 827, sec. 105.

Sedgwick, in his work on Damages, sec. 573, explains that the compensation is for death and not injuries to deceased. This reasoning, he says, leads to the conclusion that medical and funeral expenses are not recoverable. However, he adds, in this country generally funeral expenses of deceased may be recovered where any of those for whose benefit the action is brought are legally bound to pay.

Tiffany, in his work on Death by Wrongful Act, sec. 157, states the rule as follows: "In the United States, however, funeral expenses are generally held to be a legitimate element of damages, at least when paid by one of the beneficiaries who was under obligation to pay them." Such claim for damages is not an asset to an estate. *City of Friend v. Burleigh,* 53 Neb. 674. To confine the damage, as some courts have, to the loss occasioned by the decedent "not being alive" is in our judgment to construe the statute too narrowly. Funeral expenses are literally caused by the death. It is the duty of parents to bury their deceased minor children.

In *Marshall v. Miller Bros.,* 112 Kan. 706, it was held that, under the statute authorizing a recovery for the

benefit of the next of kin against one whose wrongful act has occasioned a death, the damages recovered by a father for the death of his minor son may include compensation for funeral expenses; that "while under some decisions adhering to the strict rule that the sole measure of damages is the pecuniary loss occasioned by the destruction of life of the deceased person, there can be no recovery for medical or funeral expenses, the weight of authority is to the effect that recovery can be had for medical and funeral expenses which have been paid by the beneficiaries, or for which they are liable."

Some of the cases which do not allow funeral expenses as a part of the measure of damage adopt the argument sometimes suggested that the defendant should not be held liable for funeral expenses, because eventually they would have to be paid anyway, and that the tort did not cause the expense, but merely accelerated the date of payment. This argument is not persuasive in a case where the action is brought for the benefit of the father and mother for the wrongful death of a minor child, for the reason that, in such a case, the presumption is that, in the absence of the wrongful and negligent act of the defendant, the parent would never be called upon to pay the funeral expenses. In line with the weight of authority, we adopt the rule that a parent can recover funeral expenses incurred for an unmarried minor child whose death was caused by defendant's negligence.

In accordance with this opinion the judgment of the trial court is reversed and the cause remanded.

REVERSED.