MILDRED B. KROEGER, ADMINISTRATRIX OF THE ESTATE OF
RUSSELL K. KROEGER, DECEASED, APPELLEE, V. KARL
SAFRANEK, APPELLANT, IMPLEADED WITH PRUCKA
TRANSPORTATION, INC., A CORPORATION, APPELLEE.

72 N. W. 2d 831

Filed November 4, 1955. No. 33766.

*Howard V. Kanouff* and *Schaper & Schaper,* for appellant.

*Pilcher, Haney & Howard,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This appeal from the district court for Saunders County involves an action based on the alleged wrongful death of Russell K. Kroeger. It was brought by

Mildred B. Kroeger, administratrix of decedent's estate, for the benefit of his widow and 5-year-old daughter as next of kin. Plaintiff recovered a verdict of $37,725 against defendant Karl Safranek and judgment was entered thereon. Defendant Safranek thereupon filed a motion for new trial and perfected this appeal from the overruling thereof.

Decedent was an employee of Prucka Transportation, Inc., a corporation, and, at the time of his death, was acting within the scope of that employment. In view thereof the employer has paid the widow workmen's compensation benefits and is entitled to be subrogated to any recovery by appellee to the extent of such payments. It was for that reason made a party defendant in this action.

The accident, which resulted in the death of Russell K. Kroeger, happened about 11 p. m. on Thursday, July 23, 1953, on U. S. Highway No. 30-A, also identified as State Highway No. 92, at a point in Saunders County that is about 7½ miles west of Wahoo, Nebraska. It occurred when the trailer of a tractor-trailer unit owned and being driven east on U. S. Highway No. 30-A by appellant collided with the tractor of a tractor-trailer unit being driven west on this same highway by decedent for Prucka Transportation, Inc. We shall hereinafter refer to these trucking units as either the appellant's truck or the Prucka truck. From the evidence adduced the jury could properly find that the impact occurred north of the marked center line of the paved highway; that it was occasioned by the weaving of the front end of the trailer of appellant's truck north across the center line and into the left side or front fender and wheel of the tractor of the Prucka truck; that the Prucka truck was, at that time, being driven by decedent west in the north lane for westbound traffic; that the initial blow caused the back end of appellant's trailer to whip to the north; and that as a result the back end thereof also hit the tractor of the Prucka truck and resulted in the driver

thereof losing control. The Prucka truck, subsequent to the collision, ended up in a cornfield to the south of the highway. When stopped it was facing southwest.

The foregoing is a general picture of when, where, and how the accident happened. We shall discuss some of the evidence in more detail in connection with the errors assigned. It is true appellant testified the collision occurred south of the center line of the highway but, since appellee obtained a verdict, we must accept, as established, the facts most favorable to her.

Appellant contends decedent's walking into the wires of a power line and being electrocuted was such an efficient intervening cause that it can be said, as a matter of law, that any negligence of the appellant, even though established, could not be and was not the proximate cause of decedent's death. He also contends that, in any event, decedent's death by electrocution was not a natural, probable, reasonable, and proximate consequence of any act on his part nor reasonably, in the nature of things, to be contemplated or foreseen by him.

There was an electric power line located just south of the highway at the point where the accident happened. It ran parallel with the highway and was located some four or five rows out in the cornfield. This cornfield was located just south of the highway and adjacent thereto. The Prucka truck, in leaving the highway and entering this cornfield, broke off a pole supporting this power line. The breaking of the pole left some 5 or 6 feet of the upper end thereof attached to the power line wires by insulators, neither of the wires having been broken by the impact. The weight of this piece of pole, together with the wires, caused the power line to sag. It sagged into the tops of the corn. After the truck he was driving had stopped the decedent got out on the left side of the cab and, with the aid of a flashlight, started for the highway. He first walked around the front of the truck and then headed straight north, the highway at this point running east and west.

As he came to where the wires were hanging in the corn he went down. Whether he fell or came directly in contact with a wire and was knocked down is not shown. However, he ended up lying on the ground with his body across one wire, the other suspended some 4 feet above him. He was in this position a considerable length of time before he could be moved. His death was caused by electrocution.

"Proximate cause, as used in the law of negligence, is that cause which is a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the accident could not have happened." Anderson v. Byrd, 133 Neb. 483, 275 N. W. 825. See, also, Danielsen v. Eickhoff, 159 Neb. 374, 66 N. W. 2d 913.

"A party is only answerable for the natural, probable, reasonable, and proximate consequences of his acts; and where some new efficient cause intervenes, not set in motion by him, and not connected with but independent of his acts and not flowing therefrom, and not reasonably in the nature of things to be contemplated or foreseen by him, and produced the injury, it is the dominant cause." Driekosen v. Black, Sivalls & Bryson, 158 Neb. 531, 64 N. W. 2d 88. See, also, Johnson v. City of Omaha, 108 Neb. 481, 188 N. W. 122.

" 'An injury that could not have been foreseen or reasonably anticipated as the probable result of the negligence is not actionable, nor is an injury that is not the natural consequence of the negligence complained of, and would not have resulted from it, but for the interposition of some new, independent cause that could not have been anticipated.' Chicago, St. P., M. & O. R. Co. v. Elliott, 5 C. C. A. 347." Johnson v. City of Omaha, *supra*.

"If the original negligence is of a character which, according to the usual experience of mankind, is liable to invite or induce the interventon of some subsequent cause, the intervening cause will not excuse it, and the

subsequent mischief will be held to be the result of the original negligence." Driekosen v. Black, Sivalls & Bryson, *supra.*

"A cause of an injury may be the proximate cause notwithstanding it acted through successive instruments or a series of events, if the instruments or events were combined in one continuous chain or train through which the force of the cause operated to produce the disaster." 38 Am. Jur., Negligence, § 56, p. 705.

We think the collision of the two trucks on the highway set in motion a series of events, which included the breaking of the pole and the sagging of the power line wires, which combined in one continuous chain or train through which that force operated to produce the disaster. We do not think decedent's getting out of the cab and starting for the highway was such an efficient intervening cause as to absolutely defeat any right to recover. We do think it presented a question of fact as to whether or not, by his action, decedent was guilty of contributory negligence, and if so, the extent thereof. That issue was presented to the jury.

A comparable situation is found in the case of Arnold v. Northern States Power Co., 209 Minn. 551, 297 N. W. 182, wherein the court held the continuous sequence of events so put in motion was in no way interrupted. We think that is true here. Under the circumstances here disclosed we think a jury could properly find the accident was caused by appellant's negligence and that the ensuing death of the driver of the Prucka truck was a natural, probable, and reasonable consequence thereof.

Complaint is made of the court's instruction No. 1. In this regard we have said:

"This court has frequently criticized the practice of copying the pleadings as a method of stating the issues to a jury and where they contain allegations not supported by evidence it may be reversible error to include such allegations in defining the issues if the reviewing court is satisfied that the jury may have been misled

thereby. See Hutchinson v. Western Bridge & Construction Co., 97 Neb. 439, 150 N. W. 193; McClelland v. Interstate Transit Lines, 139 Neb. 146, 296 N. W. 757. However, the fact that the court copied the pleadings in presenting the case to the jury is not alone sufficient to cause a reversal unless it can be said that the complaining party was prejudiced thereby. See Scott v. New England Mutual Life Insurance Co., 128 Neb. 867, 260 N. W. 377; Merritt v. Ash Grove Lime & Portland Cement Co., 136 Neb. 52, 285 N. W. 97." Franks v. Jirdon, 146 Neb. 585, 20 N. W. 2d 597.

"The proper method of presenting a case to the jury is a clear and concise statement by the court of those issues which find support in the evidence and not by substantially copying the pleadings of the parties and if, by doing the latter, it results in prejudice to the complaining party it is a sufficient ground for reversal." Snyder v. Farmers Irr. Dist., 157 Neb. 771, 61 N. W. 2d 557.

Appellant complains of the fact that the trial court, without any request therefor on the part of appellee, increased the amount appellee sought to recover on her first cause of action from $119,748.34 to $144,643 and changed the facts alleged as the basis therefor. In her petition appellee alleged: "That prior to the accident, plaintiff's decedent was an able bodied and gainfully employed truck driver earning an average weekly wage of $119.00. That decedent was twenty-nine years of age at the time of said accident and had a normal life expectancy of thirty-eight years; that decedent's widow is thirty-one years of age and his minor child, Diane Susan, is five years of age. That at the time of his death, decedent was living at home with his wife and child and was the sole and only support of his family; and that due to the negligence of the defendant Safranek, plaintiff has been deprived of decedent's support of the value of $6,188.00 per year for thirty-eight years, or $235,144.00; that the present value of said sum is $119,-

748.34. That by reason of the foregoing, plaintiff has suffered damages on her First Cause of Action in the amount of $119,748.34. * * * WHEREFORE, plaintiff prays for judgment against the defendant Karl Safranek in the sum of $119,748.34 on her First Cause of Action, * * *."

In its instruction No. 1 the court informed the jury: "That prior to the accident plaintiff's decedent was an able bodied and gainfully employed truck driver earning an average weekly wage of $122.00. That decedent was twenty-nine years of age at the time of said accident and had a normal life expectancy of thirty-eight years; that decedent's widow is thirty-one years of age and his minor child, Diane Susan, is five years of age. That at the time of his death, decedent was living at home with his wife and child and was the sole and only support of his family; and that due to the negligence of the defendant Safranek, plaintiff has been deprived of decedent's support of the value of $6,344.00 per year for thirty-eight years, or $241,072.00; that the present value of said sum is $144,643.00. That by reason of the foregoing, plaintiff has suffered damages on her first cause of action in the amount of $144,643.00. * * * WHEREFORE, plaintiff prays for judgment against the defendant Karl Safranek in the sum of $144,643.00 on her First Cause of Action, * * *."

The appellee and decedent were married on March 31, 1947. After decedent got out of the service he attended college in California for about 2 years. During this time he worked as registrar for the school he was attending. He worked as registrar during the day and attended classes at night. As registrar he received $320 a month. His father, a farmer who lived near Bennington, Nebraska, became ill, suffering from cancer. The family thereupon requested decedent to come home. In response to this request decedent, together with his family consisting of his wife and daughter, Diane Susan, born February 10, 1948, returned to the parental home.

He returned in the early part of 1949 and remained there until after his father died in January 1951. During this time decedent and his family received their board and room together with some money. Neither the value of the board and room nor the amount of the money received is shown. After his father's death decedent worked for the Kirby Company in Omaha as a book-keeper. He worked at this line for about 2 years earning a net of $75 a week. In May 1953 he obtained the employment he was engaged in when he was killed. He was an over-the-road truck driver. During the period of this employment he averaged $122 a week during the 7 weeks he worked full time.

"The office of the ad damnum in a pleading is to fix the amount beyond which a party may not recover on the trial of his action. Cole v. Hayes, 78 Me. 539, 7A. 391; Karnuff v. Kelch, 69 N. J. Law 499, 55 A. 163; Vincent v. Mutual Reserve Fund Life Assn., 75 Conn. 650, 55 A. 177.

"The general rule is that an amendment may be made to a pleading which does not change the issues nor affect the quantum of proof as to a material fact at any stage of the proceedings. Miller Rubber Products Co. v. Anderson, 123 Neb. 247, 242 N. W. 449; Robinson Outdoor Advertising Co. v. Wendelin Baking Co., 145 Neb. 112, 15 N. W. 2d 388.

"No good reason is apparent why this rule should not apply to the ad damnum as well as any other part of a petition." Gable v. Pathfinder Irr. Dist., 159 Neb. 778, 68 N. W. 2d 500.

In the instant case no request for such amendment appears to have been made. In the absence thereof we do not think the court should have made such a material change in the amount sought to be recovered. This is particularly true in this case because the change made is based on the highest earnings shown, which had continued over only a very short period of time considering his probable lifetime expectancy.

Appellant complains because the court submitted speed as a basis for negligence. In this respect instruction No. 1 submitted this issue as follows: "(e) In driving his vehicle at an excessive rate of speed. (f) In driving his vehicle at a rate of speed greater than was reasonable and prudent having regard for the tendency of his tractor and empty trailer to swerve from side to side at such speed and thereby create a hazard on said highway."

There is evidence that appellant was driving his truck between 48 and 50 miles an hour at the time of the accident. This was not in violation of the statutory maximum. See § 39-7,108, R. R. S. 1943. There is evidence that appellant's trailer was swaying or weaving from side to side, that is, it would from time to time sway or weave to the edge of the pavement and onto the curb and then sway or weave back across the center line of the highway.

"It is the duty of the trial court to present to the jury those issues which are raised by the pleadings and which find support in the evidence." Oliver v. Oliver, 159 Neb. 218, 66 N. W. 2d 420.

"In stating the issues to the jury it is error, which may be prejudicial, for the trial court to include allegations of which there is no proof." Oliver v. Oliver, *supra*. See, also, Weisenmiller v. Nestor, 154 Neb. 839, 49 N. W. 2d 679; Simcho v. Omaha & C. B. St. Ry. Co., 150 Neb. 634, 35 N. W. 2d 501; Styskal v. Brickey, 158 Neb. 208, 62 N. W. 2d 854.

It seems to us the allegations of (e) of instruction No. 1 could, when considered in connection with instruction No. 8, have been interpreted as relating to the maximum lawful speed of 50 miles per hour. There is no proof that appellant was driving his truck in excess of that limit. The allegations of (f), considering our statement of what the evidence shows as to the trailer of appellant's truck, was properly submitted in view of the following provision of the statute relating thereto.

The statute, in this respect, provides: "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing." § 39-7,108, R. R. S. 1943.

Appellant further complains of instruction No. 1 containing the allegation, also found in appellee's petition, that decedent was caused "to suffer an excruciating death by electrocution." The ground for this complaint is that the nature of decedent's death could, in no manner, be a basis for any rights appellee might have and that its only effect could be to inflame the minds of the jury and thus gain their sympathy.

We held in Hindmarsh v. Sulpho Saline Bath Co., 108 Neb. 168, 187 N. W. 806, that: "* * * in the action brought by the personal representative, in behalf of the statutory beneficiaries, to recover damages for the death caused by the wrongful act of the defendant, the recovery must be measured by the pecuniary loss suffered by those beneficiaries by being deprived of what they would have received from the earnings of the injured party from the date of his death, had he lived out his full expectancy."

And, in O'Grady v. Union Stock Yards Co., 90 Neb. 138, 132 N. W. 938, we held: "We are required by our law to restrict the recovery to the pecuniary value lost to the family."

Thus any pain or suffering endured by the decedent is not an element upon which appellee can herein base any recovery and it was error for the court to include the allegations in its instructions. In this regard we have not overlookd that the court advised the jury that recovery "is limited to the monetary loss suffered by the widow and the child and that alone." Such admonition does not necessarily cure any and all ill effects that might result from the language used.

Further is the fact that no evidence was introduced to support this allegation. We have often said: " 'The instructions of the court should direct the attention of

the jury only to the facts in support of which evidence has been introduced upon the trial. * * *.' Mannion v. Talboy, 76 Neb. 570." Trute v. Holden, 118 Neb. 449, 225 N. W. 238. See, also, Fick v. Herman, 159 Neb. 758, 68 N. W. 2d 622; Allen v. Clark, 148 Neb. 627, 28 N. W. 2d 439.

Appellant also complains of the fact that the court in its instruction No. 14, which relates to informing the jury about assessing the amount appellee could recover, if they found she was entitled to do so, and what it could consider in arriving thereat, included the following: "* * * value of services according to their worth in money, during the period that probably would have been the lifetime of Russell K. Kroeger." The basis for the complaint is that no claim was made therefor in appellee's petition nor proof offered in regard thereto.

That the value of services to one's family may be recovered in this type of action has long been recognized by the holdings of this court. As stated in O'Grady v. Union Stock Yards Co., *supra*: "We are required by our law to restrict the recovery to the pecuniary value lost to the family. This, however, is not necessarily limited to the dollars and cents which the deceased would probably have expended upon his family if he had lived. Care and maintenance of children mean more than this. The jury may properly consider 'his services * * * in the superintendence and attention to, and care of, his family and the education of his children.' Chicago, R. I. & P. R. Co. v. Zernecke, 59 Neb. 689." See, also, Pricer v. Lincoln Gas & Electric Light Co., 111 Neb. 209, 196 N. W. 150.

In this regard we have said:

"The law does not provide any positive, definite mathematical formula or legal rule by which a jury shall fix the pecuniary loss suffered in the death of the head of a family." Tate v. Barry, 144 Neb. 517, 13 N. W. 2d 879.

" 'A presumption of pecuniary loss exists in favor of one legally entitled to service or support from one killed by the wrongful or negligent act of another.' Killion v. Dinklage, 121 Neb. 322, 236 N. W. 757." Tate v. Barry, *supra*.

And in Moses v. Mathews, 95 Neb. 672, 146 N. W. 920, Ann. Cas. 1915A 698, we said: "In an action to recover for the loss to a husband of the services of a wife, it is not essential that the exact money value per day, week or month, of her services be proved with mathematical certainty. If the wife is able to perform ordinary household duties, the lack of such services constitutes an element of damages. Ordinarily, the matter must be left to the good judgment and ordinary common sense of the jurors, considering the circumstances of each case, and, unless the verdict is manifestly unjust and excessive, it will not be disturbed on appeal." See, also, Chicago, R. I. & P. Ry. Co. v. Zernecke, 59 Neb. 689, 82 N. W. 26, 55 L. R. A. 610.

Appellee did not make any claim in her pleadings for such services nor was any evidence introduced at the trial in regard thereto. The only claim made was that his death deprived them of decedent's support. In this respect the evidence shows the decedent always lived with his family from the time of the marriage and used whatever he earned in support thereof.

As we have already stated herein, it is the duty of the trial court to present to the jury only those issues which are raised by the pleadings and which find support in the evidence adduced. "The charge of the trial court to the jury should be confined to the issues presented by the pleadings and supported by evidence." Perrine v. Hokser, 158 Neb. 190, 62 N. W. 2d 677. Consequently it would be error, which might be prejudicial, for the trial court to include an element of damage which is neither claimed nor proved. In Borcherding v. Eklund, 156 Neb. 196, 55 N. W. 2d 643, we quoted, with approval, the following from 25 C. J. S., Damages, § 185, p. 890:

"Where the pleadings and evidence sufficiently raise such issue, the court in a personal injury case should properly instruct the jury concerning damages for loss of time or earnings."

And in Shiverick & Co. v. Gunning Co., 59 Neb. 73, 80 N. W. 264, we held: "Instructions should not submit to the jury elements of damage not embraced within the evidence adduced on the trial." See, also, Borcherding v. Eklund, *supra*.

In the absence of claim therefor and proof of the extent thereof we think it would be purely speculation and conjecture on the part of a jury to formulate any idea of the value of such services even though a presumption of pecuniary loss exists in favor of those legally entitled to such service and although the exact money value per day, week, or month for such services need not be proved with mathematical certainty.

Appellant contends the court, in its instruction No. 16, which is an instruction on how to compute damages, completely ignored advising the jury that in computing the present worth of the financial benefits that would, with reasonable certainty, have resulted to appellee and her child, of the fact that the amount upon which such determination must be made to depend is the amount of decedent's earnings it found he would, had he lived, have, with reasonable certainty, contributed to their support and not, as the court therein stated, to "the probable income that the deceased would have earned."

In this regard we have said: "The personal representative is entitled to recover for the widow and next of kin, in the statutory action for wrongfully causing death, the pecuniary loss suffered by them by reason of their being deprived of what they would have received from the earnings of the injured party, from the time of his death, during the period that he would have lived, had he lived out his entire expectancy." Hindmarsh v. Sulpho Saline Bath Co., *supra*.

It is true that instruction No. 14 given by the court

includes this limitation. However, we very much doubt if the two instructions can be read together and be said to properly inform the jury of this limitation. Since the case must be sent back for a new trial because of other errors which occurred we do not think a further discussion thereof is necessary as instruction No. 16 can then be corrected by the trial court. It is sufficient to say: "It is always the duty of the court to instruct the jury as to the proper basis upon which damages are to be estimated. The jury should be fully and fairly informed as to the various items or elements of damage which they should take into consideration in arriving at their verdict, otherwise the jury may be confused and misled." Linch v. Hartford Fire Ins. Co., 138 Neb. 110, 292 N. W. 27, 129 A. L. R. 1063.

We have not overlooked the fact that appellee testified that decedent brought home all the money he earned and that it was all used for the support of the family. Regardless of this testimony it was still the duty of the court, in telling the jury how to compute the present worth of the financial benefits that would, with reasonable certainty, have resulted to the appellee and her daughter from the continued life of decedent, to state it correctly and to include therein a limitation of his earnings to what it found he would, with reasonable certainty, have contributed to their support.

Appellant further complains of instruction No. 16 because it does not require the jury to consider the age, appearance, and health of the child in determining the present worth of any financial benefits which would accrue to her. In this respect it does limit the amount of any benefits accruing to her by advising the jury they would not be available to her after she had reached the age of 21. We think, under the circumstances here shown as to her life expectancy, that this was a sufficient limitation and properly presented and limited the issue as to appellee's right to recover for her daughter.

Appellant complains the court erred in submitting

funeral and burial expenses as an element of recovery and, if recoverable, by permitting their recovery in a separate action. He urges that our wrongful death statutes, sections 30-809 and 30-810, R. R. S. 1943, provide for but one action for the pecuniary loss for the widow or widower and next of kin. Section 30-810, R. R. S. 1943, provides, insofar as here material, that: "The verdict or judgment should be for the amount of damages which the persons in whose behalf the action is brought have sustained."

Under this language we think that recovery may be had in such a case for medical and funeral expenses which have been paid by the beneficiaries for whom the action is brought, or for which they are legally liable. See Killion v. Dinklage, 121 Neb. 322, 236 N. W. 757, for a discussion of this question and a review of the holdings of other courts of this country in regard thereto.

As stated in Annotation, 94 A. L. R. 441: "But in a large majority of the states in which the question has arisen it is held that funeral expenses are recoverable as damages in an action for death by wrongful act, when the plaintiff has paid or has rendered himself legally liable to pay the funeral expenses of the deceased. The ground for this holding is that the funeral expenses are a direct result of the wrongful death, and, as a matter of justice should be considered as an item of damages suffered by the person liable to pay them."

In allowing their recovery we think it proper and best to do so in a separate cause of action. The reason for our so holding is that if recovery therefor is allowed by the jury the amount of such recovery will be known and it can then be distributed to the beneficiaries who have paid them or are legally liable for their payment.

Appellant complains of the court's refusing to admit in evidence exhibits Nos. 25, 26, and 27. The foregoing exhibits were offered in evidence as schematic drawings of two semitrailers and tractors of the dimension of the ones decedent and appellant were driving, as shown by

the evidence. It shows them colliding on the highway in the positions as testified to by witnesses for both sides. They are drawn to scale.

As stated in 20 Am. Jur., Evidence, § 739, p. 616: "It is a well-established rule, applied in everyday practice in courts, that maps, drawings, and diagrams illustrating the scenes of a transaction and the relative location of objects, if shown to be reasonably accurate and correct, are admissible in evidence, in order to enable the court or jury to understand and apply the established facts to the particular case. The use of such things as testimony of the objects represented rests fundamentally upon the theory that they represent a method of pictorial communication of a qualified witness which he may use instead of, or in addition to, some other method. Evidence of this character is helpful in aiding the jury to visualize the objects and scenes in the action."

We think these exhibits should have been admitted.

Appellant also complains of the court's instruction No. 5. We think this instruction was in error insofar as it referred to "the defendant having alleged in his answer that the proximate cause of the accident was negligence on the part of the plaintiff, * * *." It should have been plaintiff's decedent.

Appellant also complains of instruction No. 5 because it does not specifically inform the jury that appellant's burden of proving negligence on the part of decedent arises only in connection with appellant's defense of contributory negligence.

"Instructions given to a jury must be construed together and if, when considered as a whole, they properly state the law it is sufficient." Shiers v. Cowgill, 157 Neb. 265, 59 N. W. 2d 407. See, also, Bolio v. Scholting, 152 Neb. 588, 41 N. W. 2d 913.

While instruction No. 5 should have more definitely related appellant's burden in this regard to his defense of contributory negligence, we think, when the instructions relating to contributory negligence as a defense

are considered as a whole, that the jury could not possibly have been misled as to what instruction No. 5 related.

Appellant complains of the trial court's denial of his request: "* * * to state to the jury that Prucka Transportation Company, although named as a defendant, would pay no part—that is, would be liable for no part of any judgment rendered in this case; * * *."

As a basis for this request is the claim that the local newspapers published the fact that Prucka Transportation, Inc., was made a party defendant in this action and because thereof the jury might have thought it would be liable for part of the judgment.

There is no proof of any kind to. support this contention. It is true that the company was made a party defendant for the reasons hereinbefore set forth. During the trial the evidence adduced established the relationship between it and decedent as that of employer and employee and that decedent was killed while so engaged. However, the court's instructions did not, in any manner, refer to the company as a defendant or that it could in any way be held liable. Consequently we do not find error occurred in the overruling of appellant's request. In order to sustain it we would have to assume the jury did not follow the court's instructions but went outside of the scope thereof in returning its verdict. That we cannot do.

While some of the errors herein found to have occurred might not, in and of themselves, be of such character as to require a reversal, we find, however, that because thereof appellant did not have a fair trial. We therefore reverse the judgment of the district court and remand the cause with directions that appellant be granted a new trial.

REVERSED AND REMANDED WITH
DIRECTIONS FOR A NEW TRIAL.