AUGUST MEYER ET AL. V. JEROME SHAMP ET AL.

FILED MAY 5, 1897. No. 7245.

1. Action Upon Promise for Benefit of Third Person. "Where one makes a promise to another for the benefit of a third person, such third person can maintain an action upon the promise, though the

Meyer v. Shamp.

consideration does not move directly from him." (*Shamp v. Meyer*, 20 Neb., 223.*)

2. **Law of the Case.** "A judgment or ruling of this court in a case or point distinctly and finally made will be held to be the law of the case in which made throughout its course of litigation without regard to the number of times it may be brought before the court, or the intrinsic merits of such judgment or ruling." (*Meyer v. Shamp*, 26 Neb., 729.)

3. **Verdict: Compromise: Review.** Where it is clear that a verdict of a jury is based on a compromise of the differences of opinion of its individual members, and in disregard of the evidence, it is not error to set it aside.

4. **Instructions: Assignments of Error.** An assignment in a motion for a new trial, that "the court erred in giving on its own motion each of the instructions numbered 1, 2, 3," etc., is sufficiently specific, and the same is true of a similarly worded assignment in the motion, in reference to the refusal to give several instructions requested by the complaining party. (*Kirchman v. Kratky*, 51 Neb., 191.)

5. ———: **Repetitions.** The refusal to give an instruction prepared and requested is not erroneous where the same subject-matter was fully embraced in an instruction given.

6. **Contracts: Construction: Extrinsic Evidence.** As the general rule, the construction of a contract is a question of law, and it is the duty of the court to determine and announce its meaning. This is invariably true where the contract is to be construed with strict reference to its terms. If the construction must be in part from proof of facts extrinsic to the terms of contract, it may become a matter for the jury.

7. ———: ———: **Trial.** *Held*, That the contract involved in the controversy in the case at bar was one which it was the province of the court to construe; hence there was no error in an instruction in which the trial court announced the meaning of such contract.

8. **Trial: Evidence: Admission of Notes and Checks.** Errors were alleged of the admission in evidence of certain notes and checks without a sufficient foundation having been laid for their introduction. *Held*, That the matters on the proof of which such instruments might have had a hearing were in this action all independent facts capable of proof by the oral testimony of any one having actual personal knowledge of them, and the latter evidence which was introduced was primary and not secondary; and inasmuch as these matters were fully shown by oral testimony, and were also proven in the cross-examination of some of the witnesses, if there were any errors in the admission of the notes and checks, they were without prejudice.

*See, also, *Barnett v. Pratt*, 37 Neb., 349.

9. **Review.** *Held,* That there was sufficient evidence to sustain the verdict.

ERROR from the district court of Lancaster county. Tried below before HALL, J.   *Affirmed.*

. *Sawyer, Snell & Frost,* for plaintiffs in error.

*Cornish & Lamb, contra.*

HARRISON, J.

In this action, instituted in the district court of Lancaster county, it was alleged for cause of action, in the original petition filed, that certain parties, Jerome Shamp, the defendant in error herein, T. B. Dawson, and J. A. Wallingford, constituted a firm or partnership under the name and style of Dawson, Shamp & Co., engaged on and for some time prior to November 9, 1880, in the business of buying and selling agricultural implements, machinery, etc., at Lincoln, and had become and were indebted to persons and firms in the amounts and as specifically set forth in the itemized statement in the petition, which we need not copy or refer to more definitely here; that on the date just stated the interest of defendant in error in the business of said partnership was by him sold to one John Giesler, who then became a member of a firm which adopted the name Dawson, Wallingford & Co.; that said last mentioned firm and John Giesler, as a part consideration of the sale and transfer of the interest of defendant in error in the business, agreed and assumed to pay certain liabilities of the former firm, including the ones specifically stated in the petition, and to save the defendant in error harmless therefrom; that on or about December 24, 1880, J. A. Wallingford, for a valuable consideration, sold and conveyed all his interest in the business and partnership property to T. B. Dawson, John Giesler, and one E. C. Nahrung, and as a part of the consideration for such sale and transfer the three parties just named agreed to pay all the indebtedness and liabilities, of any kind or nature whatsoever, of the firm of Dawson,

Wallingford & Co.   The firm name was changed to Dawson, Nahrung & Co.   The next change that occurred, one August Meyer purchased a one-fourth interest in the business, and subsequently to this, Dawson sold his part of the business to the other members and withdrew from the firm, a part of the consideration of each of the sales being the assumption, by the party or parties purchasing, of the debts and liabilities of the firm.   The firm, after the last change to which we have just alluded, was known as Geisler, Nahrung & Meyer.   In March, 1882, Giesler quit the business and firm, and when he did so, sold and transferred his rights in the business and property to the other two of the partners, a part of the consideration for such transfer being the assumption of the payment of all the debts and obligations of the old firm by the new partnership of Nahrung & Meyer.   In October, 1882, the firm of Nahrung & Meyer was dissolved. August Meyer received and retained certain of the credits and effects of the partnership, and assumed and agreed to pay all liabilities of the firm.   Each alleged assumption of and agreement to pay debts and obligations stated in the petition was also pleaded to have included the specifically enumerated liabilities of the original firm of Dawson, Shamp & Co., and to have in each instance been coupled with the further agreement to release and relieve the party to whom the promise was made from such liabilities.   It was further pleaded that none of the parties or firms, promisors, had ever fulfilled their agreements, and the liabilities had remained unpaid and the defendant in error had been forced to pay them, and the sums so paid had never been repaid to defendant in error by the plaintiff in error, or any of the said parties or firms. To this petition there was interposed a demurrer, which on hearing was sustained and the action was dismissed. In error proceedings to this court the judgment of the district court was reversed and the cause remanded, the main question at that time being whether the alleged promise made by Meyer to pay these liabilities was one

on which a cause of action in favor of defendant in error arose or could be based; and it was held: "Where one makes a promise to another for the benefit of a third person, such third person can maintain an action upon that promise, though the consideration does not move directly from him." (*Shamp v. Meyer*, 20 Neb., 223.) The case was returned to the district court, where, as the result of a trial, the defendant in error was awarded a judgment, and the cause was again presented to this court by error proceedings on behalf of the party who was defeated in the trial court, and, on hearing, the judgment was reversed and the case remanded. It was announced in the decision, reported in 26 Neb., 729, *Meyer v. Shamp*, in regard to the questions which had been adjudicated at the former hearing and which were at the second presentation again urged, that "A judgment or ruling of this court in a case or point distinctly and finally made will be held to be the law of the case in which made throughout its course of litigation, without regard to the number of times it may be brought before the court, or to the intrinsic merits of such judgment or ruling," but the judgment was reversed for the reasons that the evidence disclosed that the defendant in error had not been alone in the payment of the claims on the payment of which he based his rights of action, but had been assisted by J. A. Wallingford, and Wallingford had assigned the interest thus acquired to defendant in error; and there was no statement in the petition under which a recovery was asserted or could be sustained in favor of defendant in error as assignee of claims accruing to Wallingford by virtue of his making the payments shown by the evidence. When the case again reached the district court an amended petition was filed for the defendant in error, in which the payments or assistance therein by Wallingford was stated, also the subsequent assignment by him of all rights thus obtained to the defendant in error. The items of the defendant in error's claim, as set forth in the amended petition, were as fol-

lows: "To the La Belle Wagon Works, as guarantors upon the note of one Peter Davy, in the sum of about $95.76. To R. Elwood Manufacturing Company, of Sycamore, Ill., in about the sum of $157. To Herst, Dunn & Co., of Peoria, Ill., in the sum of $37. To the La Belle Wagon Works, as guarantors upon the note of one Henry Overstake and others, in about the sum of $287.50. To Seiberling, Miller & Co., in about the sum of $66, as guarantors upon the note of one Atkinson and Westfall. To Seiberling, Miller & Co., as guarantors upon the note of one Magnus Larson, in about the sum of $80. To R. Elwood Manufacturing Company, in about the sum of $35, as guarantors upon the note of one L. W. Ward. To the La Belle Wagon Works, in a further sum of $257. To the Pekin Plow Company, in the sum of $19. To Seiberling, Miller & Co., in the further sum of $58.57. To C. W. and W. W. Marsh, in the sum of $115.60. To R. Elwood Manufacturing Company, as guarantors on the note of Fred Witte, in the sum of $30, and interest from May 1, 1880." To the amended petition there was an answer filed, in which were pleaded three defenses: A general denial, a plea of the bar of the statute of limitations, and a settlement. Issues were joined and a trial had. The jury to which the case was submitted, it appears, returned a verdict which was not in proper form. It is shown by some affidavits filed with the motion for a new trial that this verdict was for the plaintiff (defendant in error) in the sum of one dollar, and that defendant (plaintiff in error) pay all costs in the case. The jury was instructed in regard to the form of verdict, retired to its room, and came into court with a verdict in which the defendant in error was awarded the sum of $1. Motion for a new trial was made for defendant in error, which was sustained. In a subsequent trial the defendant in error was given a verdict of $1,000, from which the trial judge required a remittitur of the sum of $350 of the amount of the verdict, and, on compliance with this requirement, overruled the plaintiff in error's motion for a

new trial and rendered judgment for the defendant in error.

It is argued that the trial court erred in sustaining the motion of defendant in error for a new trial and in setting aside the verdict for $1. One of the grounds of that motion for a new trial was as follows: "There is error in the assessment of the amount of recovery in this: the action is brought to recover on several items of indebtedness, none in a less sum than $18 and interest; the verdict is for the plaintiff in the sum of one dollar; on no hypothesis from the testimony can such verdict be justified." It is further said in this connection that the trial judge, in sustaining the motion for a new trial, was largely influenced by what is stated in section 2606 of 2 Thompson on Trials, as follows: "Where the verdict which the jury returns cannot be justified upon any hypothesis presented by the evidence, it ought obviously to. be set aside. Thus, if a suit were brought upon a promissory note, which purported to be given for $100, and the only defense was that the defendant did not execute the note, and the jury should return a verdict for $50 only, it would not be allowed to stand; for it would neither conform to the plaintiff's evidence nor to that of the defendant. It would be a verdict without evidence to support it, and it is not to be tolerated that the jury should thus assume, in disregard of the law and evidence, to arbitrate the differences of parties, or to decide according to some supposed natural equity, which in reality is merely their own whim."

The motion for a new trial, to which counsel refer here, contained several other grounds on which it was, apparently, claimed that it should be granted; but if it be conceded that it was on the one point, as claimed by counsel, and which we have hereinbefore stated, after a careful examination of the evidence adduced at the trial, we must conclude that the court did not err. Under the issue presented by the general denial the finding, if for defendant in error, must necessarily have been for a

greater sum than $1.  There is no conceivable condition
which the evidence could have assumed and a verdict be
rendered on this issue, other than by a compromise or
disregard of the amount shown to be due, and be for such
sum as was this one.  If the defense of the bar of the
statute of limitations had been determined proved as to
all the items of the claim, then the verdict should have
been for the plaintiff in error; but if adjudged applicable
to any number of the items, or as to all but one, the ver-
dict could not in any event, under this defense, be for $1
and be warranted and sustained by the evidence.  If we
turn to the defense of settlement, the contention of plain-
tiff in error was that a full settlement had been made;
hence a finding in his favor on this branch of the case
would necessarily have produced a verdict of no cause of
action.  If the jury believed the theory of defendant in
error relative to this issue and the evidence which tended
to support it, they would necessarily have thrown out
certain of the items of claim; but there was no fact or
set of facts disclosed from which the jury could possibly
make a finding on this issue of a balance of $1 due the
defendant in error.  There was no item of the claim
which was for $1, or on which payments had been made
which reduced the amount due to such a sum.  If a find-
ing was made for defendant in error, the amount to be
awarded him could but be a matter of computation.  It
was not a suit for unliquidated damages, to be assessed in
a lump or round sum.  It was clear that the jury must
have arrived at the verdict rendered by a compromise,
or by disregarding the evidence and substituting for what
was thereby shown its own idea or estimate of what
would be about justice and right between the parties
litigant.  From all of which we are led to conclude that
the trial court was not in error in setting aside the ver-
dict for defendant in error in the sum of $1 and awarding
a new trial of the cause.

Of the assignment of errors are some with reference to
instructions.  These, it is asserted by counsel for defend-

ant in error, must prove ineffective, for the reason that in the motion for a new trial the errors alleged in respect to instructions given or refused were not separately assigned. This was probably true of such assignments in the original motion, but in the amended motion for a new trial it was stated, "The court erred in giving on its own motion each of the instructions by it numbered 1, 2, 3;" also, "The court erred in refusing to give each of the instructions asked by defendant and by defendant numbered 1, 2, 3, 4." It has been decided by this court that the use of the word "each," as in the foregoing assignments, renders them sufficiently specific. (*Aultman v. Martin*, 49 Neb., 103.)

It is urged that the trial court erred in its refusal to give an instruction requested, numbered 7, and giving in its stead one prepared on its own motion and numbered 8, the main criticism being that the one given was too general in its statements to be sufficiently clear and intelligible to the jury with reference to the information which it was its office to convey, and that this defect would have been cured by the one requested, which it is claimed was more specific and definite in its statements and clearer in its import. From an examination and comparison of the two instructions we are satisfied that the one given was sufficiently definite in its terms to fully and clearly convey the ideas intended; and while the one refused was in some respects more specific, or a more extended statement of the same subject-matter, its giving would probably not have effected the intended purpose any better than the one which was given.

It is also urged that it was error to give the instruction numbered 12, given by the court of its own motion; that in it the court gave a construction to a verbal contract which was an invasion of the province of the jury. It has been said: "Simple contracts are all those which are not contracts by specialty. It is not accurate in point of language to distinguish between verbal contracts and written contracts; for whether the words are written or

spoken, the contracts are equally verbal, or expressed in words.   Nor is it accurate in point of law to distinguish between written and parol contracts.   For whether they be written or only spoken, they are, in law, if not sealed, equally and only parol contracts.   For some purposes, and especially by the requirements of the statute of frauds, the evidence of the contract must be in writing; and when it is in writing, some peculiar rules of law apply to it.   But it is a mistake to rest upon this a legal distinction between written and oral contracts; and from this mistake some confusion has arisen."   (1 Parsons, Contracts, 7.)   But whether when the contract of the parties has been reduced to writing, it may be called a written contract, and where it rests entirely in verbal statements of the parties, it is proper to call it a verbal or parol contract, we need not now determine.   The one with which we have to deal was not committed to writing.   As a general rule, the construction of a contract is for the court.   It is the duty of the court to determine and announce the meaning of contracts.   It is a question of law.   (2 Parsons, Contracts, 491, 492; 3 Am. & Eng. Ency. of Law, 867.)   It has been announced by this court that it is for courts to construe contracts, where they are to be construed, with strict reference to their terms; but if the construction must be in part from proof of facts extrinsic to the terms of the contracts, the construction may become a question for the jury.   (*Coquillard v. Hovey*, 23 Neb., 622.)

The evidence in the case at bar was not conflicting in regard to what were the terms of any contract which might be determined to have been made.   There was evidence of what parties had understood the contract to mean.   It would have been wrong to allow the jury to consider evidence of what different parties understood to be the import of the contract and construe it by the light of such evidence; nor do we think it was necessary here, to resort to acts of parties which probably may sometime be of use and be used in determining the meaning of contracts.   The contract shown herein was sufficiently ex-

32

plicit to furnish in and of itself a true index of the intentions of the parties thereto; hence its construction was a work for the court, and there was no error in the instruction, the subject of complaint now under consideration.

There is some argument on one point in the original question in the case, viz., whether an action will lie in favor of Shamp against Meyer, on the promise of Meyer, such as it was pleaded and shown to be. This was, we think, fully determined in the former hearings of the case in this court, including the point now presented, and must be held to have been settled and the law of the case. (*Shamp v. Meyer, supra; Meyer v. Shamp, supra.*)

Of the evidence introduced at the trial were several of the original notes referred to in the petition of the defendant in error with either the guaranty or indorsement of Dawson, Shamp & Co., as it appeared on the instruments; also some checks, the mediums by which it was testified payments of certain of these old debts had been effected by Shamp; also two judgments, which it was stated in evidence had been obtained on notes of the indebtedness, of the payment of which respectively, the firm of Dawson, Shamp & Co. was a guarantor, the judgments being against such firm in the capacity to which we have alluded. No proof was made of the signatures to the notes which were introduced, or of the signatures to the guaranties or indorsements thereon, or of the signatures to the checks claimed to have been given in payment by Shamp of these liabilities of the firm as guarantor. Counsel for plaintiff in error interposed an objection to the introduction of any and all of the evidence to which we have just referred, whenever offered, and its admission is assigned for error. It is also argued in this connection that the evidence was inadmissible and was incompetent, and being so, there was no valid proof of the indebtedness, of the guaranty, or of payment; hence no sufficient evidence to sustain the verdict. The rules asserted by counsel in argument in relation to the non-admissibility of parol evidence

of the contents of written instruments,—that it will only be allowed in specified and well defined instances, exceptions to such general rules, and under well defined precedent conditions to be fulfilled by the party seeking to introduce the evidence,—are doubtless correct; also what is urged in regard to the necessity of proving the execution of the notes and the guaranties of the same may be correct, but we do not think it applicable here. This is not an action between the original parties to either the notes or guaranties; neither is it an action on the notes or guaranties. The gravamen of this suit is the promise of plaintiff in error to pay the indebtedness of the firm. What that indebtedness was, that it existed, that notes evidencing it had been executed in each individual instance where it had been done, the execution by the firm of any notes, or of the guaranties, that plaintiff in error had failed to pay, and defendant in error had paid, were all independent facts, which in this case were capable of proof by the parol testimony of any person who had actual personal knowledge of them; and such evidence would be primary and not secondary. There was ample evidence of each and every one of the above facts, aside from the documentary or written evidence to which objections were made. Moreover, on cross-examinations of witnesses who were sworn on behalf of the defendant in error, these facts were sufficiently proven to support the verdict. From the foregoing conclusions it results that if there were any errors in the admission of the matters of evidence which it is asserted were objectionable, they were not prejudicial, and the assignment of errors in regard to them, and also that the evidence as to these designated points was insufficient, must be overruled.

This completes the examination of the assignments of error presented here, and it follows from the conclusions herein that the judgment of the district court will be

AFFIRMED.