JOSEPH H. JAMES, APPELLEE, V. HAYDEN BROTHERS, APPELLANT.

FILED JANUARY 29, 1915. No. 17,998.

1. Municipal Corporations: USE OF STREETS: ACTIONABLE NEGLIGENCE. It is actionable negligence to drive a horse, attached to a wagon, in such a manner as to collide with, knock down and injure a pedestrian lawfully walking along the sidewalk of a public street of a city.

2. Master and Servant: NEGLIGENCE OF SERVANT: LIABILITY OF MASTER. The person thus injured, without fault on his part, may recover of the master of the driver for his injuries, if, at the time of the

collision, the driver was engaged in carrying on the master's business.

3. **Damages: Remittitur.** The evidence failing to show any permanent injury, a verdict for $4,000 is excessive, and the plaintiff should be required to file a remittitur of $2,000 or the judgment will be reversed; but, if the remittitur is filed, the judgment thus reduced will be affirmed.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed on condition.*

*Greene, Breckenridge, Gurley & Woodrough,* for appellant.

*Jefferis & Tunison, contra.*

BARNES, J.

This was an action for damages for personal injuries. The plaintiff alleged in his petition that the servant and employee of the defendant, while in the course of defendant's business, carelessly and negligently omitted to control a horse and vehicle which he was then driving, and negligently and carelessly drove and managed said horse and vehicle at a rapid and dangerous rate of speed, and without regard to the rights of the plaintiff, who was upon the sidewalk on one of the streets of the city of Omaha, and, by reason of said negligence, the horse and vehicle violently ran upon and across said sidewalk, and against and upon the plaintiff with great force and violence, while the plaintiff, in the exercise of ordinary care, and while in plain view of said driver, was walking eastward on the south sidewalk of Izard street and in front of a gateway leading into the feed stables of the defendant, and thereby struck and knocked the plaintiff with great force and violence upon the ground, and dragged him and ran over and injured him severely and permanently. Defendant, by its answer, admitted that it was a corporation, organized and existing under and by virtue of the laws of the state of Nebraska; admitted that on or about November 3, 1911, a collision occurred between plaintiff and a horse and vehicle belonging to defendant; denied each and every allegation of the

plaintiff's petition and, further answering, alleged that plaintiff's injuries, if any, resulting from the aforesaid collision, were received through plaintiff's own carelessness and negligence, and not through that of the defendant. The cause was tried in the district court for Douglas county. The jury returned a verdict for the plaintiff for $4,000, on which the court rendered judgment, and the defendant has appealed.

It appears that on the 3d day of November, 1911, the plaintiff, while walking east on the sidewalk on the south side of Izard street, in the city of Omaha, and while passing the defendant's barn, where it kept its teams and delivery wagons, was run down by the horse and wagon of defendant, which a servant of the defendant was driving from the street into defendant's yard. The accident, as described by the witnesses, occurred as follows: The plaintiff, while lawfully passing along the sidewalk in the prosecution of his own business, had occasion to pass defendant's premises where there was a driveway from the street across the sidewalk into defendant's yard and barn. It was a cold day, and plaintiff had on an overcoat, with his hands in his pockets. He was walking along the sidewalk looking neither to the right nor to the left. Just at that instant, the defendant's servant, with a horse and wagon, on his way to the barn, came up behind the plaintiff from the west and turned in onto the driveway. As the horse was about to collide with plaintiff, the driver called, "Look out!" and at the same instant the horse's head struck the plaintiff and knocked him down. The horse veered slightly to the east, the wagon ran against the plaintiff and dragged him into the yard. The person who was driving the horse uttered a profane exclamation and went on his way, while another of defendant's servants came out from the barn, helped the plaintiff up, took him into the barn, washed his cuts and bruises, brushed his hat and clothing, and started him on his way. The plaintiff went to his home, and sent for Dr. Bliss, who attended to his injuries, which will hereafter be more particularly described.

James v. Hayden Bros.

It is defendant's first contention that the evidence was insufficient to justify a verdict for the plaintiff and against the defendant. We think this contention should not be sustained. The plaintiff, when struck by the defendant's horse, was lawfully passing along the sidewalk on the public street of the city, attending to his own affairs. He had no notice that any one was approaching him or intended to enter upon the driveway across the sidewalk. The driver of defendant' horse was approaching the driveway from the west and behind the plaintiff. One of defendant's witnesses testified that the horse was trotting as it came down the street and turned into the driveway. The view of the driver was unobstructed, and he must have been aware of the fact that plaintiff was crossing the driveway and did not see him. The driver was in a hurry to get his horse put up, for it was about noon, and it is apparent that he negligently and carelessly drove the horse against the plaintiff without giving him timely warning of his approach. The evidence was therefore sufficient on this point to sustain the verdict.

Defendant's second contention is that the verdict and judgment were grossly excessive, and that the verdict was given as a result of passion and prejudice. This requires us to consider the evidence relating to the plaintiff's injuries. The record shows that the plaintiff's head was cut open in two places. The wound on the back of his head was the more extensive, and was bleeding profusely. There were other bruises and abrasions on his person, and especially on his wrists, which abrasions were filled with dust and cinders. He complained of an injury to his back, and could hardly walk. After his wounds were washed, he went home, and called Dr. Bliss. The doctor dressed his wounds and prescribed rest and the use of some kind of liniment. This was the only treatment which the doctor gave him, and, after a couple of visits, he was not again called. The plaintiff remained in bed some time, and did not attempt to do any work for about two months. At the time of the accident he was a collector for the Singer Sewing Machine Company and was earning about $85 a month. About the

James v. Hayden Bros.

1st of February, 1912, he obtained a position as collector for the Independent Telephone Company at $15 a week. This position he held until that company went out of business. He then obtained employment as a solicitor and collector for a furniture company, and at the time of the trial was earning $12 a week. It thus appears that plaintiff suffered some diminution of his earning capacity by reason of his injuries. He testified that his wounds healed up all right, but he complained of his back and lameness in one of his hips. He testified that he was continually troubled with it, and that he easily became tired and did not rest well nights; that he obtained relief from the use of hot baths and liniment. Shortly before the trial, plaintiff was examined by Drs. Bliss and Bacon, and their evidence appears in the record. Neither of these witnesses testified that plaintiff's injuries were necessarily permanent. Dr. Bliss advised plaintiff to have an X-ray examination of his hip; but this was not done, and there is no competent evidence that plaintiff was permanently injured. Dr. Bliss stated that his recovery might require considerable time; but he did not state that his injuries were permanent. Two other competent medical experts, who heard the evidence of Drs. Bliss and Bacon, testified that they could not determine from the examination made by those doctors that the plaintiff had sustained any permanent injury.

As we view the evidence, the verdict for $4,000 was grossly excessive and should have been materially reduced. If the plaintiff files a remittitur with the clerk of this court in the sum of $2,000, within 30 days, the judgment as thus reduced will be affirmed; otherwise the judgment will be reversed and the cause remanded for further proceedings.

AFFIRMED ON CONDITION.

MORRISSEY, C. J., ROSE and SEDGWICK, JJ., not sitting.