MARGARET O'BRIEN, APPELLEE, V. J. I. CASE COMPANY ET AL., APPELLANTS.

2 N. W. (2d) 107

FILED JANUARY 30, 1942. No. 31240.

*Hall, Cline & Williams* and *Flavel A. Wright*, for appellants.

*Max G. Towle* and *Archie C. O'Brien, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

MESSMORE, J.

This is an action for damages for personal injuries received by the plaintiff while riding as a guest in an automobile, driven by her brother, which collided with an automobile, driven by an employee of the defendant corporation. Plaintiff recovered the amount of $10,000. From this verdict and judgment thereon, defendants appeal.

The occurrence of the collision and the parties involved therein are not in dispute. Plaintiff's amended petition is proper in form to state a cause of action for negligence. The pleadings are hereinafter briefly summarized:

Defendant Waite negligently and unlawfully, by applying his brakes, without proper warning or signaling of any kind, as required by law, and without due regard for life

or property of others on the highway, suddenly stopped his car on the highway directly in the line of traffic to assist two women hitchhikers, causing the automobile in which plaintiff was riding to hit the rear end of defendant driver's car. Further, the defendant driver failed to have his car under proper control. Defendants' answer contained a general denial and affirmative allegations of negligence as against the driver of the car in which plaintiff was riding, and that any damages sustained by the plaintiff were caused directly and proximately by the driver of such car in operating it at a rate of speed greater than was reasonable and proper under the circumstances, in failing to keep a proper lookout, and in not seeing the car which he was following, or, if he did see it, in disregarding such knowledge and failing to reduce his speed to avoid running into the car ahead of him, and in failing to turn to the left or right to avoid a collision. The answer contains a further charge of contributory negligence in that the plaintiff failed to keep a proper lookout and to warn the driver of his negligence. The reply was a general denial. The record reflects the following:

The plaintiff, a young lady, 27 years of age, a competent employee of the Lincoln Telephone and Telegraph Company, left Lincoln at about 3:30 p. m. on August 19, 1939, in a Chevrolet automobile, operated by her brother, James J. O'Brien, for Norfolk, Nebraska, to visit a sister. O'Brien was driving at a speed of not to exceed 45 miles an hour till he reached the place of the accident, which was about 20 miles distant from Lincoln, three miles north of Ceresco, and approximately nine miles south of Wahoo. Just prior to the accident they passed two cars. O'Brien first saw the Waite car, some distance ahead of him, when three-fourths of a mile to a mile south of the place of collision. Standing near an intersection, 90 to 100 feet south of that point, were two young ladies, seeking a ride to Mead. The defendant driver, operating a 1939 Plymouth coupé, noticed the girls when he was approximately one-fourth of a mile south of the intersection. The width of the oil mat at the

scene of the accident is 27 feet; the distance from the middle of the intersection, three miles north of Ceresco, to the top of the hill south is 975 feet, and from the middle of the intersection to the top of the hill to the north 1,280 feet. A No. 77 highway sign is 113 feet south of the intersection from the middle thereof. The grade to the south is practically level for approximately 900 feet; then slopes to the south and down over the top of the hill for 200 feet where it is fairly level, then rises to the north.

The defendant driver testified that, as he came over the crest of the small hill south of the intersection he took his foot off the accelerator; the girls waved; his car was coasting as he approached the intersection; he then applied his brakes "just a little bit and slowed down to probably 20 miles an hour," stopping somewhere near the No. 77 highway sign on the east side of the road, and then came to a complete stop, with the front end of his car "a little farther over than the the back end of the car, and the right front wheel was down off on to the rough part of the slab;" that there was sufficient room on his left to permit a car to pass; that as he stopped he turned around and "looked back to see what the girls were doing;" that he saw a car approaching at a distance of from 50 to 75 feet away and he heard the sound of the brakes at the same time; that he shut his eyes; there was a sudden impact, and his car was knocked to the north of the highway into a ditch, facing east. The O'Brien car had been following the defendant driver for at least a mile at a distance of 50 to 100 feet behind him. When the defendant driver stopped, the plaintiff's brother applied the brakes of the Chevrolet, turned to the left in an attempt to avoid a collision, but was unable to accomplish his purpose.

O'Brien testified that he noticed the girls when he was 100 to 300 feet south of the intersection; that they were indicating they wanted a ride; that the point of impact when the two cars collided was 40 to 50 feet north of the No. 77 sign and approximately 140 to 160 feet north of the intersection; that defendant driver, without putting out

his hand or signaling that he was going to stop, slammed on his brakes and stopped suddenly, directly in the line of traffic, in front of the O'Brien car; that he gave no signals from his lights. The speed of the two cars remained about the same until the defendant driver's car stopped and O'Brien applied the brakes on his car. After the accident the plaintiff was removed to a hospital in Wahoo, and her brother remained at the scene of the accident to clear the highway.

The testimony of the two girls corroborated the defendant driver to a marked extent, with some variation as to distances; that is, when the driver stopped the O'Brien car was a half-block to a block distant from him; that no car was coming from the north at the time; that the tire marks of the O'Brien car ran from the south side of the cross-road, "kittycornered over the white line of the road" in a northwesterly direction, beginning on the south side of the intersection. The deputy sheriff testified that he saw skid marks east of the center line of the highway, and that the left wheels were two feet east of the center line, which controverts the testimony of the two girls on this point. O'Brien testified that at or about the time of the accident a Ford Model T car, with some boys in it, was approaching from the north, creating a condition which might have involved such car in the accident as O'Brien turned to the left.

Much expert testimony was introduced regarding tests made with respect to the speed and the stopping of automobiles. It was shown that the stopping distance of a 1939 Chevrolet, being driven by a normal person of the age of O'Brien, with a specified reaction to automobile equipment, traveling at 40 miles an hour, would be 109 feet; at 45 miles an hour, 149 feet. The testimony with reference to skid marks is that there were no such marks evident on the pavement, beginning where the skid marks of the O'Brien car stopped, with the exception of a distance of 8 to 10 feet, supposedly made by the Waite car when it was struck, while the O'Brien car proceeded 57 feet, as shown by the skid marks attributed

to it, and such marks being evidenced on the highway for that distance. O'Brien testified that he drove on an average of 50,000 miles a year, was an inspector of trucks and automobile equipment for the state railway commission, and had been trained in the state patrol. We deem a further recital of the testimony unnecessary.

The defendants contend that the trial court should have directed a verdict in their behalf on the physical facts as shown by the expert testimony, coupled with the distances, as testified to, and the testimony with respect to the speed of the respective cars. Many provisions of the statute are cited, which we have considered, together with section 39-1145, Comp. St. Supp. 1935, which provides: "(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicles and the traffic upon and condition of the highway."

The contention of defendants is that the negligence of the driver of the automobile in which plaintiff was riding constituted the proximate cause of the accident, and that the plaintiff is barred from recovering from a third person. In support of this contention, defendants cite two Louisiana cases from the court of appeals of that state, which are similar in fact to the case at bar. *Fuld v. Maryland Casualty Co.*, 178 So. (La. App.) 201; *Session v. Kinchen,* 178 So. (La. App.) 635. In the former case the distinction between it and the case at bar is that the driver of the truck, which was proceeding ahead of the Fuld car at a rate of 35 miles an hour, suddenly found that he was out of gas, compelling him to coast along the line of traffic, slowing down his truck considerably. The Fuld car had been traveling at 40 miles an hour, within 150 to 170 feet of the truck, and ran into it. In the instant case there is evidence that the defendant driver suddenly stopped without signaling. In the *Fuld* case the court stated it did not think "the truck driver came to such a sudden stop as to require him to give the signal;" rather, that the excessive speed of the Fuld car was the proximate cause of the accident, and that it

was the duty of the driver of the Fuld car to keep a proper lookout and keep his car under control. There is a distinction between a sudden stop and the coasting of a car, both with reference to the time to act and the distance within which a person might keep a proper lookout. In the case of *Session v. Kinchen, supra,* while there was a controverted question as to the stop made by Kinchen, the testimony is that he came to a stop gradually. In the instant case there is definite evidence that Waite came to a sudden and abrupt stop.

Without detailing the law set forth in the two Louisiana cases, we conclude that the testimony in the instant case is of such a controversial nature, and conflicting, as a question of fact, as to which driver was guilty of negligence, constituting the proximate cause of the accident, as to render it a question for the jury. We are not convinced that the physical facts in the instant case are such as would bar the submission of the case to the jury.

Our law places duties on drivers of motor vehicles traveling on the public highway. The duty of the driver of a car proceeding in front of another car is to indicate by proper signals his intention to turn to the left or right, or to stop, or to give any other signal that may be of assistance to the driver of the car following, and the driver of the car following has, likewise, certain statutory duties and must give certain signals in the event he desires to turn out and pass the car in front of him. Whether or not the proper signals were given and whether or not the driver of either car, under the circumstances, was negligent are, ordinarily, jury questions. The distances between cars, one following the other, and the ability of the driver to stop under given circumstances differ. The driver of an automobile following another, while he must obey the law, as heretofore cited (Comp. St. Supp. 1935, sec. 39-1145), is not bound to anticipate that the driver of the car ahead is going to come to a sudden and abrupt stop for the purpose of picking up hitchhikers.

The two automobiles, in the instant case, were proceed-

ing along an almost level, dry highway, with good visibility, with nothing to interrupt their driving or make it difficult. The Waite car had been proceeding at 50 miles an hour; the O'Brien car at 40 to 45 miles. Obviously, as long as the cars retained their respective speeds, there would be no collision, but if the car ahead stopped suddenly or abruptly or slowed down instantly, without the driver thereof giving any signals, as required by law, the driver of the car following would be confronted with an emergency. We believe O'Brien acted as an ordinary, prudent person would act under like or similar circumstances. He immediately applied his brakes in an endeavor to stop his car and tried to turn to the left and avoid the Waite car. He could not turn to the right; the girls were in that vicinity.

In consideration of the entire record, we conclude that the negligence of the defendant driver and the negligence of the driver of the car in which the plaintiff was riding presented a jury question under proper instructions.

Defendants contend that the plaintiff was guilty of contributory negligence in that she failed to notify the driver of the car in which she was riding of the danger that might be apparent, and for her failure to keep a proper lookout for any danger that might arise. The situation was not of an unusual nature, or out of the ordinary, such as to require the plaintiff to warn her brother with reference to his driving. We find no evidence of contributory negligence.

Defendants complain that the verdict is grossly excessive, is the result of passion and prejudice, and should be set aside. We have examined the evidence with reference to the personal injuries and disabilities received by the plaintiff, as given by the attending physicians and medical experts. The plaintiff received an injury to her right elbow, diagnosed as a a contusion of the periosteum of the right medial condyle. This injury caused her some considerable pain, but the medical experts testified that her elbow would become normal with the lapse of time. She has a scar, caused by a deep cut on her right brow just below the hair line, about three and a half inches long, the cut extend-

ing down to the skull. This scar is permanent. Other scars she has, according to the medical testimony, will in time more or less diminish. Her total medical expenses and care amounted to $398.35. There is no evidence of any other permanent disability. She complained of headaches and especially of pain in her right elbow and of irritability. She did receive a moderate degree of shock and anemia. All of this seems to have been greatly relieved with the lapse of time. She lost no wages in her employment and is still competent to perform the duties required of her by her employer. The cases cited with reference to verdicts are of little value. We are bound by the record before us in each case.

In consideration of the medical evidence, in that the plaintiff will regain normalcy in every respect with the lapse of time, we are driven to the conclusion that the verdict of the jury is excessive and resulted from passion and prejudice. The court erred in overruling defendants' motion for a new trial.

The judgment is reversed and the cause remanded.

REVERSED.