HOMER KINDY V. A. C. WILLINGHAM ET AL.

No. A-1439. Decided March 17, 1948.
Rehearing overruled April 14, 1948.
(209 S. W., 2d Series, 585.)

*Jones, Jones & Brian* and *Franklin Jones,* all of Marshall, and *S. I. Cornett,* of Linden, for petitioner.

*Strasburger, Price, Holland, Kelton & Miller,* of Dallas, and *Scott, Wilson & Cureton* and *Frank M. Wilson,* all of Waco, for respondents.

Mr. Justice Folley delivered the opinion of the Court.

This is a personal injury suit by the petitioner, Homer Kindy, against the respondent, A. C. Willingham, and others, for damages sustained in a collision between a truck in which petitioner was riding and one alleged to have been owned by respondents and operated by their driver. Various acts of negligence were alleged by the opposing parties against each other. In the trial thirty-one issues were submitted to the jury. They embraced several, but not all, of the alleged acts of negligence, with attendant issues of proximate cause. In the findings the petitioner was acquitted of all negligent acts. The respondents were found guilty of only one act of negligence, but in answer to special issue number 6, the jury also found that this one act of negligence was not a proximate cause of the injuries. Thus no act of either party was found to be the proximate cause of the collision, though it was further found that the collision was not the result of an unavoidable accident. The damages were assessed by the jury at $31,000.00. Upon this veredict the trial court rendered judgment that petitioner take nothing, which was affirmed by the Court of Civil Appeals. 205 S. W. (2d) 435.

The petitioner presents but two points. He contends that each of them entitles him to a new trial. The first is based upon alleged jury misconduct, and the second is that there was an irreconcilable conflict in the jury findings.

The alleged misconduct of the jury is by reason of an agreement made in advance of a vote on the issue to abide by a vote of the majority, which agreement petitioner contends was carried out by the jury in reaching its verdict.

We have no statement of facts on the motion for new trial, but the trial court made the following findings, which are not challenged:

"This cause went to the jury about 2:30 P. M. on the afternoon of October 26, A. D., 1946. Upon retiring to consider of their verdict, the jury deliberated for some time before answering any of the special issues submitted to them. After several hours of deliberation, during which time the jurors, through discussion, made known their positions on various issues in this case, including Special Issue No. 6. It appeared to the jury that they were hung or would be unable to reach an agreement; but after suggestion had been made by one of their number, the entire jury panel agreed that they would abide by the verdict of seventy-five per cent (75%) of their number; and that all of the jury entered into this 'gentlemen's agreement' among themselves, and thereupon called for a definite vote upon the issues and some of the issues were answered unanimously but some of the issues were answered by count or a vote of eight to four,—Special Issue No. 6 being one of these issues.

"The Court further finds that after this one vote was taken, that it was understood by the entire jury panel that all twelve would abide by such answers and that all twelve would assent or consent to the answering of the issues in the manner said issues were answered; and that after all the special issues were answered that all twelve of the jurors consented to the verdict as being their verdict, and that the verdict was then brought into open Court, presented to the Court and the answers read to each issue that was answered by the Court, and the Court then turned to the jury and inquired of them if the verdict as read represented their verdict, to which question all jurors giving indications nodded ther assent, and those not giving an indictations raised no objections nor stated by any signs or words that such was not their verdict."

■ The law is well settled in this and other jurisdictions that the action of jurors in binding themselves in advance to abide by the decision of the majority upon issues submitted to them vitiates the verdict so reached. This rule is not affected by the fact that after the majority expresses its will, all of the jurors assent thereto either in the jury room or thereafter in open court. Casstevens v. Texas & P. Ry. Co. 119 Texas 456, 32 S. W. (2d) 637, 73 A. L. R. 89; Boddeker v. Olchewske, 127 Texas. 598, 94 S. W. (2d) 730. Nor is the evil effect of such an agreement relieved by the jury's agreeing thereafter to a slightly different verdict, if it appears that a previous agreement in-

duced or entered into the result. In order to remove the vice it must appear that the jurors completely disregarded or abandonded the previous agreement and were not actuated on influenced by it in the subsequent adoption of the verdict returned. Texas Midland R. R. v. Atherton, 123 S. W. 704; Whisenant v. Schawe, 141 S. W. 146; San Antonio Traction Co. v. Crisp, 162 S. W. 422; Galveston, H. & S. A. Ry. Co. v. Brassell, 173 S. W. 522; Brookman v. State, 50 Texas Crim. Rep. 277, 96 S. W. 928, 123 Am. St. Rep. 838; Pruitt v. State, 30 Texas Crim. App. 156, 16 S. W. 773; Driver v. State, 37 Texas Crim. Rep. 160, 38 S. W. 1020; Sanders v. State, 45 Texas Crim. Rep. 518, 78 S. W. 518, 108 Am. St. Rep. 973; 53 Am. Jur. 713, Sec. 1032.

■ These rules are based on the sound doctrine that every verdict should not be the result of chance or lot, but should be arrived at through the deliberate judgment, sound reflection, and conscientious convictions of the jury. 64 C. J. 1033, Sec. 829.

The Court of Civil Appeals held that the agreement here involved was not fatal to the verdict because it was made after the jurors had ascertained each other's views as to how the issues should be answered. In arriving at that conclusion the court relied upon some language employed by this court in Boddeker v. Olechewske, supra, to the effect that "An agreemen made after it became known on which side the majority had voted, the effect of which was that the minority would defer to the majority and make the vote unanimous, does not constitute misconduct." In that case there was a fact issue as to whether the agreement was made before the test vote was taken or afterward. It was pointed out, however, that if it had been established by undisputed evidence that the agreement was entered into in advance when it was not known how the majority would vote, it would have been this court's duty to set the verdict aside. The vice in such an agreement in advance of the test vote is that the jurors would not know the kind of verdict to which they were to be bound, and would result in some of the jurors adopting the views of others without surrendering their own. But some of the testimony indicated that the jury had voted 7 to 5 on the issue and then agreed that "the minority would go over to the majority." This court was bound by the implied finding by the trial court to that effect, and upon that premise announced that such an agreement did not constitute misconduct. Therefore, the agreement in mind which prompted the announcement above quoted was not one to abide by a majority vote to be taken subsequent to the agreement, but one where the minority, not by reason of a previous

agreement but in abandonment of prior convictions, agreed to adopt the views of the majority as expressed in a vote already taken. A verdict so attained would not be one of chance or lot, but one resulting from deliberate judgment, and as such would not be condemned. However, as we construe the findings of the trial court the verdict in this case ·was not arrived at in that manner.

■ It appears that prior to the time of the agreement no positive vote on the issues had been taken by the jurors. The fact that they had indicated their attitudes on some of the issues, including No. 6, did not necessarily signify a commitment so fixed as to remove the element of chance in a definite vote to be taken subsequent to the agreement. The probability of a change of position prior to the vote was so prevalent that the jurors could not know with certainty the full effect of the agreement· nor the result to be obtained by it. Moreover, the finding that they had made known their position "on various issues" indicates neither a definite commitment nor a tentative opinion on all of them. The word "various" means "several," or "different," or "uncertain," but does not include "all" or "the whole." The finding therefore impliedly excludes some of the issues. The only issue specifically mentioned was No. 6. That issue was not the only one, nor was it in the only group, relied upon by the petitioner for a recovery. There were others which would have supported a judgment .in his behalf, and these had not been answered. Upon the suggestion of one of their number, the agreement then was made that the entire panel would abide by a verdict of 75% of their members upon a vote thereafter to be taken. Thereupon, and for the first time, a definite vote was called for, and "some of the issues were answered unanimously but some of the issues were answered by the count or a vote of eight to four,—Special Issue No. 6 being one of these issues." Oddly enough, it is evident that it did not occur to the jury that a vote of 8 to 4 was not a majority of 75% of their members. That oversight, however, does not cure the evil consequences of the previous agreement because it appears that they assumed they were bound by it and gave effect to it. That is obvious from the further finding "that after this one vote was taken, that it was understood by the entire jury panel that all twelve would abide by such answers and that all twelve would assent or consent to the answering of the issues in the manner said issues were answered." Thus, irrespective of the percentage of the vote, it clearly appears that answers to some of the disputed issues, including No. 6 on proximate cause, were obtained only by reason of the agreement, and contrary to the

convictions of the jurors as established by the evidence. The purported answers of the jury were so imbued with misconduct as to be condemned under our law. A verdict so obtained will not support a judgment finally adjudicating the rights of the parties, and a new trial should have been granted.

In view of these conclusions, the other question as to the irreconcilable conflict in the jury findings becomes immaterial, and we express no opinion with reference to it.

The judgments of both courts below are reversed, and the cause is remanded to the trial court.

Opinion delivered March 17, 1948.

Rehearing overruled April 14, 1948.