HERMAN HAARBERG, APPELLEE, v. OLIVER SCHNEIDER, APPELLANT.

117 N. W. 2d 796

Filed November 16, 1962. No. 35213.

William W. Lyons, for appellant.

Daniel E. Owens, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

This is an action brought by Herman Haarberg against Oliver Schneider for damages sustained as a result of false representations made by Schneider to Haarberg in selling an automobile to Haarberg. The jury returned a verdict for the plaintiff in the amount of $1,083.34 and defendant has appealed from the judgment entered thereon.

The evidence shows that Haarberg is a farmer, 49 years of age, who has resided in Chase County all his life. Schneider is a new and used car dealer who has had a place of business in McCook, Nebraska, for the past 25 years. On September 9, 1960, Haarberg purchased a 1960 Chevrolet 4-door Corvair automobile from Schneider for which he paid $2,502.50, $950 in cash and the balance by a trade-in allowance of $1,552.50 on his 1955 Oldsmobile automobile.

Schneider had obtained the Corvair from Lester Buzzell, an automobile dealer in Cambridge, Nebraska, in June 1960. Buzzell testified that at the time he transferred the Corvair to Schneider, it had been driven more than 7,000 miles and the speedometer so showed. When Schneider transferred the Corvair to Haarberg the speedometer showed that it had been driven 800 miles, a manufacturer's suggested retail list price was attached to a rear window, and the invoice given to Haarberg

showed it was a "new" car sold on an "as is" basis. Schneider's wife testified that she made out the invoice and that she inserted "NEW" in the "New or Used" car designation by mistake. Schneider testified that when he obtained the automobile from Buzzell the speedometer was defective. He did not remember the mileage shown at that time. After its repair the mileage showed zero. Schneider and members of his family had driven the automobile during the period of Schneider's possession, which accounts for the 800 miles showing on the speedometer at the time of its sale to Haarberg.

Haarberg and his son Ronald examined the Corvair a few times before the sale was made. Both testified that Schneider represented the Corvair as a new automobile and that the speedometer correctly showed the mileage the Corvair had been driven so far as he knew. They testified also that Schneider stated that the "break-in" oil was still in the Corvair's motor and that it should have its 1,000 mile check-up when the speedometer showed 1,000 miles. Haarberg testified that he believed the representations made and relied on them when he purchased the car. Haarberg and Ronald both testified that while they were driving the Corvair home, following its purchase, the motor "cut-out" a few times and the speedometer stuck. They complained to Schneider who told them that the General Motors Company warranty was in effect and that they should take the matter up with that company. This they did and were informed that the one-year warranty had expired and that the General Motors Company had no obligation in the matter. Ronald Haarberg testified that the valve lifters stuck and the heater went out in November 1960 when he was driving the car in Brighton, Colorado. In late December the motor stuck or was burned out, and the car has not been used since. Herman Haarberg testified that the Corvair had an actual value of $1,400 to $1,500 when he purchased it. Ronald Haarberg testified that its value at that time was from $1,000 to

$1,200. There is no evidence in the record of the value of the Corvair at the time of its sale to Herman Haarberg if it had been as represented.

Schneider testified that he knew the Corvair had been used as a demonstrator, that he had the speedometer repaired, and that it showed no mileage when it was replaced in the car. He said that he never told Haarberg that the car was a new car and that he made no statement as to the number of miles the Corvair had been run. He admits that the manufacturer's suggested retail list price was on it just as it was when he received the automobile from Buzzell. Schneider's contention is that the deal was made at arms-length, that Haarberg examined the car and drove it, and that Haarberg knew that it was a used car.

We think a jury question was presented. The invoice delivered to Haarberg showed it to be a new car, and the price was the new car list price. The speedometer indicated that the Corvair had been driven only 800 miles, when Schneider knew that it had been driven 7,000 miles in addition thereto. He permitted Haarberg to assume that the car was new by leaving the manufacturer's suggested retail list price on it without explanation. These implied representations, together with the testimony of Herman and Ronald Haarberg, were sufficient to sustain the verdict of the jury. Trebelhorn v. Bartlett, 154 Neb. 113, 47 N. W. 2d 374; Herlan v. Bleck, 148 Neb. 816, 29 N. W. 2d 636; Dargue v. Chaput, 166 Neb. 69, 88 N. W. 2d 148. No contention is made that the trial court did not properly instruct the jury on the elements of fraud and misrepresentation essential to establish a cause of action.

The defendant assigns as an error the giving of instruction No. 11 which states in part: "In the event you find for the plaintiff the measure of plaintiff's damages in this case is the difference between the price paid by the plaintiff and the fair and reasonable market value of said automobile as it was on or about September 9,

1960." Plaintiff's petition alleged the sale price to be $2,502.50 and the value of the Corvair to be $1,000 at the time of the sale. The correct measure of damages is the difference between the value of the Corvair if it had been as represented and its actual value at the time of sale. Rankin v. Bigger, 128 Neb. 800, 260 N. W. 202. The petition did not allege the proper measure of damages. The court instructed on the measure of damages on the theory set out in plaintiff's petition. Defendant asserts this as error.

Plaintiff contends that the case was tried by both parties on the theory set forth in plaintiff's petition and that defendant cannot now complain. It is the rule that when a certain theory as to the measure of damages is relied upon by the parties in the trial court as the proper one, it will be adhered to on appeal whether it is correct or not. Welch v. Reeves, 142 Neb. 171, 5 N. W. 2d 275.

In the instant case, the petition was not attacked by motion or demurrer for failure to allege the proper measure of damages. The defendant asserts, however, that he made a motion for a directed verdict which had the effect of raising the question. The motion was: "The defendant at this time moves the Court for a directed verdict on the ground that the plaintiff has not shown sufficient evidence to sustain his petition." It will be observed that the form of the motion for a directed verdict is consistent with the measure of damages alleged in the petition. We think the case was tried on the theory that the measure of damages set out in the petition was the correct one and that the decision of the case is controlled by our holding in Welch v. Reeves, *supra*. The case having been tried by both parties on the measure of damages stated in plaintiff's petition, we shall adhere to that theory on this appeal, although it is not a correct one.

Defendant contends that a quotient verdict was returned by the jury and that a new trial should be

awarded for that reason. A quotient verdict is one where the jurors for the purpose of arriving at a verdict agree that each should write on his ballot a sum representing his judgment; that the aggregate should be divided by twelve; that they will be bound by the result; and that the quotient shall be the verdict. Killion v. Dinklage, 121 Neb. 322, 236 N. W. 757. Such verdicts are generally recognized as being invalid.

Three jurors were called as witnesses to establish that the verdict was a quotient one. The first testified that he could not remember everything about it but that each put down an amount and "I guess" we divided it and arrived at it that way. He testified that there was no prior agreement that the amount arrived at would be the verdict in the case and he could not remember if a subsequent vote was taken. The second juror remembered the action of the jury about the same as the first juror called. She testified that there was no agreement ahead of time to be bound by putting down an amount and she in fact testified that she did not know "that we divided by 12." The third juror testified that the jury could not arrive at an amount and someone suggested that each give the figure he thought to be correct and they would take an average of it. It was her "understanding" that the average amount would be the verdict. She testified someone said: "We should lump it off to an even thousand," and someone answered "No, it was going to be an average." She testified that no additional vote was taken.

The foregoing evidence indicates that each juror submitted a figure which was his estimate of the damages sustained by the plaintiff. There is no evidence of any prior agreement to be bound by the average of these amounts. There is evidence of a suggested change in the amount so found. While one juror said that no subsequent vote was taken, the evidence indicates that the amount of the verdict was the individual verdict of each. When a new trial is sought on the ground of misconduct

by the jury, the finding of the trial court will not be set aside unless the evidence of misconduct is clear and convincing. Where a motion for a new trial presents a question of fact concerning the regularity of the proceedings, the trial court becomes the trier of disputed facts with reference thereto, and its decision thereon will not be disturbed on appeal unless clearly wrong. Schwank v. County of Platte, 152 Neb. 273, 40 N. W. 2d 863; Pope v. Tapelt, 155 Neb. 10, 50 N. W. 2d 352. The evidence is sufficient to sustain the finding of the trial court and under the foregoing holdings such finding will not be disturbed.

We conclude that the judgment is free from prejudicial error and it is affirmed.

AFFIRMED.