THOMAS J. WINSTON, APPELLEE, V. CLOIS WAYMAN DAVIS, JR., AND CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLANTS, METROPOLITAN UTILITIES DISTRICT, A MUNIC-IPAL CORPORATION, INTERVENER-APPELLEE.

192 N. W. 2d 413

Filed December 10, 1971. No. 37901.

Herbert M. Fitle, James E. Fellows, and George S. Selders, Jr., for appellants.

S. J. Albracht and Michael P. Cavel of Lathrop, Albracht & Dolan, for appellee.

Cecil S. Brubaker, for intervener-appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

In this intersection automobile accident a police cruiser car of the defendant City of Omaha, while chasing a speeder known to be living in the vicinity, went through a stop sign and collided in an intersection with the plaintiff's motorcycle. From a jury verdict and judgment of $18,601, the defendant City of Omaha appeals claiming excessiveness in the verdict, misconduct of the jury in its deliberations, and error in the instructions.

Plaintiff sustained four fractured front teeth, cuts in his lower lip, one of which went completely through the skin, facial abrasions, an inch-long deep laceration of the tongue, and abrasions of his chest, shoulder, and back. The evidence as to his out-of-pocket expense and loss of earnings and medical, dental, and hospital expense sustains a finding of $3,601. The evidence shows a 10-day period of hospitalization and will sustain a finding that the plaintiff's speech has been impeded as the result of the deep scarring of his tongue and that he has permanent facial scars which will continue to be a source of embarrassment to him. The city's attempt to color match the cases of O'Brien v. J. I. Case Co., 140 Neb. 847, 2 N. W. 2d 107; James v. Hayden Bros., 97 Neb. 619, 150 N. W. 1013, and other cases is inapposite. The area of pecuniary allowances for pain and suffering is a highly subjective area. We find no analogy in the older cases.

Modern conditions allow a permissible different response to facial scars and disfigurement. Also, the impact of inflationary conditions renders the color of past decisions to this area less visible. In this case, inflationary considerations alone destroy the invitation to exercise the righteously passionate judicial response demanded as a requirement for setting aside a jury verdict. See, Remmenga v. Selk, 152 Neb. 625, 42 N. W. 2d 186; Johnson v. Schrepf, 154 Neb. 317, 47 N. W. 2d 853; Rueger v. Hawks, 150 Neb. 834, 36 N. W. 2d 236. We find no merit to this contention.

The city's attack upon the misconduct of the jury is two pronged. The first is an assertion of a coercively compelled verdict. This claim rests upon the hearsay testimony of two jurors concerning a speculative communication from the bailiff to the foreman or from the foreman alone allegedly used as pressure against three of the dissenting jurors, after 2 days of deliberation with the vote standing 8 to 4 or 9 to 3 in favor of the plaintiff. We need not explore any of the refinements of the historic reluctance of courts to invade from hindsight the absolute independence and integrity of jury deliberations. The hearsay testimony of the two jurors is directly refuted and denied by the bailiff and the foreman whose version was undoubtedly accepted by the trial judge in exercising his discretion in refusing to grant a new trial. The evidence of misconduct of the jury must be clear and convincing and the lower court's decision as to disputed facts and reference thereto will not be disturbed on appeal unless clearly wrong or constituting an abuse of discretion on the trial court's part. Haarberg v. Schneider, 174 Neb. 334, 117 N. W. 2d 796. There is no merit to this contention.

The other challenge is based upon a controversy arising in the heated discussion of taking the final votes in arriving at the 10 to 2 verdict in the case. It appears that the votes for the plaintiff in the 2 days of deliberation had increased from a majority of 8 to 4 to 9 to 3. The

most that we can gather from the rather vague testimony in this area is that the three dissenting jurors agreed that one of them would go over to the majority. This is not an agreement in advance to abide by a majority vote when and if taken. It is not a compromise verdict in the sense of a quotient verdict (agreeing in advance to an averaging of amounts). On the contrary once the continued and increasing majority was known to the jurors, the response in the case at bar was nothing more than the typical and legitimate pressure of a majority view upon the minority jurors. After continuous discussion the three dissenting jurors in the case at bar agreed that one of them would go over to the majority in order to reach a final verdict. We see no misconduct of the jury in this situation. Fortunately, this very distinction in an almost identical situation was passed on in Boddeker v. Olschewske, 127 Tex. 598, 94 S. W. 2d 730. The court in that case stated as follows: "The agreement * * * condemned was one made in advance when it was not known how the majority would vote. An agreement made after it became known on which side the majority had voted, the effect of which was that the minority would defer to the majority and make the vote unanimous, does not constitute misconduct." We find no merit to this contention.

A city policeman, driving a cruiser car, was chasing a known speeder who lived in the vicinity where the accident occurred. The evidence shows that he was traveling at a speed beyond the speed limit and went through a stop sign immediately prior to the time of the intersection accident involved in this case. The duties and responsibilities of a driver of an emergency vehicle are the critical issues in this case. The trial court fully instructed upon all of the applicable statutes to this situation. Then in instruction No. 15, following NJI No. 7.04, the trial court gave the following instruction: "Ordinarily, the driver of a vehicle about to enter a highway protected by a stop sign must stop his vehicle,

look for approaching traffic on the protected highway, and permit all vehicles to pass which are at such a distance and traveling at such a speed that it would be imprudent or obviously dangerous for him to proceed into the intersection. If there is a vehicle approaching on the protected highway, the vehicle entering such highway must wait until the approaching vehicle has passed, unless a prudent person would have reasonable ground to believe that such vehicle is so far distant from the intersection and traveling at such a speed that he could safely enter in advance thereof.

"The duty, in such a situation, of the driver of a law enforcement vehicle, either to stop, or slow, or yield the right-of-way, as well as the duty of the driver of a vehicle on the protected street, depend upon all the circumstances, and your judgment upon those issues, as well as upon all the issues in this case, must be based upon all the circumstances as shown by the evidence."

It is asserted in the argument that the district court's instruction No. 15 failed to advise the jury of the rights of a driver of an emergency vehicle and advised it that the driver of a police department vehicle on official business, and sounding an audible signal by siren, should have the right-of-way and the drivers of other vehicles shall yield such right-of-way to such police department vehicle. It is difficult to follow the argument of the city in this respect. The trial court properly stated all of the applicable statutes and the governing case law. Hammon v. Pedigo, 173 Neb. 787, 115 N. W. 2d 222. It is obvious from reading instruction No. 15 along with instruction No. 13 that the trial court gave an appropriately comprehensive instruction which properly directed the jury to balance the acts of the driver of the emergency vehicle depending on all of the circumstances in the case. Far from error the instruction as applied to the case is a model of balance and clarity. Without detailed recital, a very pertinent part of the surrounding circumstances brought to the jury's attention in this case,

without objection, involved the fact that the driver of the police cruiser was acquainted with the speeder he was chasing, his identity was known to the policeman who was familiar with where he lived and was following him in the vicinity of his residence. In this context, the applicability of the instructions given by the trial court is obvious. There is no merit to this contention.

The assignments of error may not be sustained. The verdict and judgment of the district court are free from error and are affirmed.

AFFIRMED.

NEWTON, J., dissenting.

The statutes of Nebraska mentioned in the majority opinion render inapplicable to police vehicles engaged in the pursuit or apprehension of law violators the ordinary statutory rules regarding speed limits, stop signs, and right-of-way. Under such circumstances, the disregard or violation of such rules *cannot be considered evidence of negligence*, yet the court so instructed in instructions Nos. 12 and 15.

These ordinary traffic rules are completely irrelevant in cases such as this. The police vehicle, sounding its siren, may travel at any speed necessary, may disregard stop signs, and its driver may rely on his right to have the right-of-way, subject only to the provision that it be operated with due regard for the safety of others.

The sole issue in this case is whether or not the police vehicle was operated with due regard for the safety of others upon the highway. This proposition must be determined in the light of what a person of ordinary prudence would or would not have done under the same circumstances. It ordinarily presents an issue for the determination of the jury, but it is error to cloud the issue with an instruction that a violation of the inapplicable statutory rules of the road may be considered as evidence of negligence.

A high speed chase through city streets is always a hazardous project and the same rule of law should be

applied as is used in other types of cases. The police are entitled to assume that their right-of-way will be respected unless and until they have knowledge to the contrary.

The rules adopted in the majority opinion have the effect of making the drivers of emergency vehicles insurers of all other travelers on the highway. The instructions given and approved establish the rule that such drivers may be considered negligent *solely* because they exceed the speed limit, run a stop sign or red light, or avail themselves of their statutory right-of-way. It is tantamount to saying that under such circumstances the driver of an emergency vehicle *may always be found to be negligent.*

In my judgment, the judgment in this case should be reversed and the cause remanded for a new trial under proper instructions.

BOSLAUGH, J., joins in this dissent.

SPENCER, J., dissenting.

I agree fully with the dissent of Newton, J., but I also believe that there is an even more basic reason why the judgment herein cannot stand, and a new trial must be granted.

The majority handles the misconduct of jury issue in a very summary manner. Three of the jurors, after continuous discussion, could not agree with the majority vote. They were informed by the foreman, supposedly because he was so told by the bailiff, that the jury must arrive at a verdict. The three of them were unwilling to change their vote but because they had been told there could not be a hung jury, they agreed that they would draw straws and the loser would be required to change his vote even though he was not in agreement with the verdict. I cannot see how this can be other than a coerced verdict.

The law is very clear that any method of arriving at a verdict except through the exercise of judgment after weighing the evidence is improper. This cer-

tainly would preclude the method employed here of agreement to join in a verdict regardless of the juror's individual judgment. See, 89 C. J. S., Trial, § 472, p. 111; 53 Am. Jur., Trial, § 1079, p. 710; Annotation, 73 A. L. R. 93.

The majority opinion has the following language: "Fortunately, this very distinction in an almost identical situation was passed on in Boddeker v. Olschewske, 127 Tex. 598, 94 S. W. 2d 730." Unfortunately for the majority, the Boddeker case did not involve chance or a lottery as this one does. In a subsequent case, Kindy v. Willingham, 146 Tex. 548, 209 S. W. 2d 585 (1947), the Texas court held: "A verdict should not be the result of chance or lot but should be arrived at through the deliberate judgment, sound reflection and conscientious conviction of the jury."

Every verdict should be arrived at through deliberate judgment, sound reflection, and the conscientious conviction of the jury, and should never be the result of chance or lot. This case is not too different from the quotient verdict cases heretofore before this court. In Spreitzer v. State, 155 Neb. 70, 50 N. W. 2d 516 (1951), this court held that if there is an agreement to be bound and the jurors vote accordingly, then the court must grant a new trial. As the court said, the vice of such a verdict is that it does not represent the deliberate judgment of the jurors and it is subject to manipulation and partakes of the nature of a lottery. See, also, Killion v. Dinklage, 121 Neb. 322, 236 N. W. 757 (1931); Schrage v. Miller, 123 Neb. 266, 242 N. W. 649 (1932).

The following language quoted from Cooley, J., at 46 Mich. 628, in Gillaspie v. Nebraska Tractor & Equipment Co., 175 Neb. 401, 122 N. W. 2d 17, is very pertinent herein: " ' "The law contemplates that they (the jury) shall, by their discussions, harmonize their views if possible, but not that they shall compromise, divide and yield for the mere purpose of an agreement. The sentiment or notion which permits this tends to bring

jury trial into discredit and to convert it into a lottery."
See also Meyer v. Shamp, 51 Neb. 424, 430.' "